BARTIE HARDING, DEFENDANT IN ERROR, v. CITY OF ST. JOSEPH, PLAINTIFF IN ERROR.*

Kansas City Court of Appeals. April 30, 1928.

*Corpus Juris-Cyc References: Municipal Corporations, 43CJ, section 1800, p. 1020, n. 90; p. 1021, n. 92; section 1855, p. 1087, n. 18; section 1963, p. 1195, n. 46; section 2045, p. 1283, n. 98; section 2056, p. 1302, n. 15; section 2059, p. 1309, n. 60.

*Miles Elliott* and *Duvall & Boyd* for defendant in error.

*R. M. Duncan, W. B. Norris, Jr.* and *Harry J. Cooney* for plaintiff in error.

FRANK, C.—Action to recover damages for personal injuries alleged to have been sustained by plaintiff on January 15, 1925 by slipping and falling on Sixth street, a public street in a densely populated portion of defendant's city. Plaintiff recovered judgment for $4000 and defendant has brought the case here by writ of error.

Sixth street runs north and south and Michel street runs east and west in said city. There was a property located on the west side of Sixth street known in the record as the Bauerline property. There was a concrete sidewalk five feet in width on the west side of Sixth street extending along this property. Plaintiff resided on North Sixth street. On January 15, 1925, between five and six o'clock P. M., she was walking south on the sidewalk on the west side of Sixth street, in a path made by pedestrians through the snow and ice which covered the sidewalk, and when she reached a point ten or twelve feet south of the north line of the Bauerline property and about fifty-seven

feet north of the north curb line of Michel street, she slipped on the ice and fell receiving severe and permanent injuries.

The evidence of plaintiff's witnesses who had occasion to and did pass over this sidewalk before and on the day of plaintiff's injury shows that the entire surface of the sidewalk was covered with snow and ice. There was a path approximately two feet in width in the center of said sidewalk which had been worn by pedestrians walking through the snow and ice. The snow and ice in this path was from two to four inches in thickness. The ice and snow on either side of the path was thicker than that in the path. The tramping of the snow in the path by pedestrians and alternative freezing and thawing converted the snow in the path into ice. This ice was rough and uneven by reason of frozen footprints therein. The sidewalk had been in this condition for about three weeks before plaintiff was injured.

Plaintiff's witnesses W. L. Ryan testified:

"Q. There were no heaps of ice there? A. Not from being shoveled up, no.

"Q. Or from any other reason? A. Yes, the wind caused some drifts.

"Q. Did it at that time? A. Yes, I would say it did.

"Q. In the path? A. Yes, that was the remainder of the drift."

Witness Harry Gouch testified:

"Q. Then the snow had not piled up there in any place, it had merely got rough by people walking in it? A. I couldn't say that it had any drifted, no.

"Q. What you say it got rough cause people tramped in it with their heel marks? A. I judge it more or less drifted against the fence.

"Q. I mean at this point? A. Mr. Bauerline's property, if I am not mistaken, had a wood fence along it and I think it has pickets if I am not mistaken and some snow would drift against that.

"Q. You think there was about six inches at the deepest place along the sidewalk outside of the path? A. That would be my honest opinion on it."

Plaintiff's witness Edward Mann described the condition of the sidewalk as follows:

"Q. Just tell the jury in your own words in what condition it was. A. The sidewalk was not cleaned off. There was, I believe, just where they had been walking over the snow probably a foot and a half wide and it melted a little—frozen ice was melted a little bit there. It froze during the night and the next day, of course, it would melt a little more and snow on the sides of the walk would drain down there."

The testimony of defendant's witnesses was to the effect that there was no snow on the sidewalk at the time plaintiff fell; that it was misting rain at that time and the mist was freezing and made a

smooth sheet of ice on the sidewalk. Defendant's witness Belden who had charge of the weather bureau in St. Joseph testified that his record showed that on January 1, 1925 there was three and one-tenth inches of snow on the ground. These records disclose that the snowfall in the city of St. Joseph from January 1st, to January 15th was as follows: January 1st two-tenths inches; 10th a trace; 12th a trace; and on the 15th rain, sleet and snow amounting to five one-hundredths of an inch at seven P. M. The witness described a trace of snow as being too small to measure. The records of the weather bureau showed the temperature during this period of time to be such as to cause alternate periods of freezing and thawing and that on January 15th there was only a trace of snow on the ground. This witness also testified that the mist and rain which fell on January 15th did not begin to freeze to the sidewalk until about seven o'clock P. M.

Other necessary facts will be stated during the course of the opinion.

Defendant tendered both a general and special demurrer at the close of the evidence. The special demurrer is as follows:

"1. That under the law and the evidence in the case the defendant city of St. Joseph is not liable, and said evidence does not disclose any actionable negligence on the part of the city of St. Joseph.

"2. That no notice, as is required by section 7955, was filed or served upon the mayor of the city of St. Joseph within sixty days of said accident, stating the time, place, character and circumstances of the injury and that the claimant would claim damages therefor from the city of St. Joseph.

"3. That a copy of the petition in said cause which was served upon the mayor within sixty days of said accident was not verified by affidavit, as is required by section 7955 of the Revised Statutes of the State of Missouri, 1919."

One ground of the demurrer is that no notice as required by law was served on the mayor of defendant city within sixty days of plaintiff's injury. The statute providing for such notice reads as follows:

"No action shall be maintained against any city of the first class on account of any injuries growing out of any defect in the condition of any bridge, boulevard, street, sidewalk or thoroughfare in said city, unless notice shall first have been given in writing, verified by affidavit, to the mayor of said city, within sixty days of the occurrence for which such damage is claimed, stating the place where, the time when such injury was received, and the character and circumstances of the injury, and that the person so injured will claim damages therefor from such city."

No notice was given other than the service of a certified copy of plaintiff's verified petition on the mayor of defendant, city.

The purpose of the legislature in requiring this statutory notice to be given is to give the city an opportunity to investigate the matters stated in the notice while happenings are fresh in the minds of witnesses, and before the physical conditions surrounding the place of the alleged accident have been changed by lapse of time or otherwise, and thus determine the justice of plaintiff's claim and the extent of its own liability.

The courts of this State have held that if suit be brought and a copy of the petition is served on the mayor of the city within the period in which the statute requires the notice to be given, the petition, if it contains the statutory requirements as to notice will take the place of the notice required by statute, and no other or further notice need be given. [Hunt v. City of St. Louis, 278 Mo. 213, 211 S. W. 673; Johnson v. K. C., 272 S. W. 713; Church v. K. C., 280 S. W. 1053; Shuff v. K. C., 282 S. W. 128.] Such holding seems to accord with sound reasoning. If the petition, when filed and served, contains all the statutory requirements as to notice, no good reason appears why a further notice containing the same information should be given.

In the case at bar the petition alleges that plaintiff was injured on January 15, 1925. It is alleged that the injury occurred in defendant city, at a point on the concrete sidewalk on the west side of Sixth street about fifty-seven feet north of the north curb line of Michel street where Michel street intersects said Sixth street. The petition then alleges the character, circumstances and extent of plaintiff's injury and asked damages therefor. The petition was verified by the affidavit of plaintiff, and a certified copy thereof was served on the mayor of defendant city on March 12, 1925, which was within sixty days of the date of plaintiff's injury. The petition contains all the statutory requirements as to notice, was served within the required time, and was a sufficient compliance with the statutory requirement as to notice.

Defendant, however, contends that the cases above cited are not in point here for the reason that the statute applicable to this case requires the notice to be verified by affidavit, while the statute considered in the cited cases did not make such requirement.

The gist of this contention is, that where, as here, the statute requires the giving of a verified written notice, the paper constituting the notice must be actually verified, and not a copy of a verified paper.

No claim is made that the contents of plaintiff's verified petition was not sufficient as a notice or that it was not served within the proper time. The question presented is whether or not the delivery of a copy of the verified petition is service of a verified written notice. We think it was. Section 9156, Revised Statutes of Missouri, 1919, which provides the manner in which notices may be served, reads as follows:

"Whenever any of the statutes of this State now require or shall hereafter require or imply that a notice shall be given to any person concerning or affecting any right, property, claim, duty, matter or thing of whatsoever character or nature, unless such statutes shall expressly direct a different method of service, the delivery of a true copy of such notice to the person intended to be notified, or the leaving of such copy at his usual place of abode, with some member of his family over the age of fifteen years, shall constitute a valid and sufficient service of such notice."

It will be noticed that this statute makes no distinction between the manner of serving verified and unverified notices, but is general in its terms, is applicable to the service of all notices, and provides that all notices may be served by delivering a true copy thereof to the party intended to be notified. This statute does not require that the copy delivered be executed or verified by the party giving the notice. The provision is that a notice may be served by delivering a true copy thereof to the party intended to be notified. The fact that an original notice is by law required to be verified by affidavit, does not change the manner of its service, or require that the copy delivered be verified. Delivery of a true copy of a verified notice, is service of the verified notice within the meaning of the law.

We, therefore, hold that the delivery of a certified copy of the petition to the mayor of defendant city, was service of a verified written notice within the meaning of the statute requiring plaintiff to give written notice verified by affidavit.

The next ground of defendant's demurrer is that the evidence does not disclose any actionable negligence. Reedy v. Brewing Association, 161 Mo. 536; Vonkey v. St. Louis, 219 Mo. 37; Armstrong v. Monett, 228 S. W. 771; Gist v. City of St. Joseph, 220 S. W. 722; Coy v. K. C., 243 S. W. 418; Albritton v. K. C., 188 S. W. 239, are cited by defendant in support of this contention.

We have carefully examined the cases cited by defendant and find that they announce the general rule that a city is not liable for a slippery condition of its sidewalk produced by natural causes such as rain or snow combined with alternate freezing and thawing, and general in its extent. These cases also hold that a city is not liable for roughness and unevenness of the snow and ice on a sidewalk occasioned by frozen footprints therein. We agree that the rule as announced in these cases is the law in this State.

Our task is to determine whether or not the evidence brings this case within the rule announced in the cases cited by defendant. It will not do to say that in no event is the city liable for slippery condition of a sidewalk occasioned by a formation of smooth ice thereon. An icy sidewalk whether smooth and slick or rough and uneven is dangerous to pedestrians walking thereon. The negligence of the defendant, if any, in permitting the snow and ice to remain on the

sidewalk, and not the character of the formation of the ice is the thing that determines whether or not the city is liable to pedestrians for personal injuries resulting from a fall on such sidewalks. This conclusion is supported by the holding of the Supreme Court in Suttmoeller v. City of St. Louis, 230 S. W. 67, 69, whereat the court said:

"A municipality's liability for injuries resulting from ice-covered walks is not predicated, however, on the character of the ice formation, but on its negligence in the premises. And the character of the formation may, or may not, be the controlling element in determining the question of negligence in a particular case. Ice in any form on a sidewalk, whether rough and ridgy, or smooth and glassy; is dangerous to the pedestrian who essays to walk over it. And it is just as much so when formed by natural causes as when created by artificial conditions. Whether in a given case a city can be said to have been negligent may depend upon a great variety of circumstances, as, for example, the nature and extent of the ice formation, the length of time it had previously existed, the conditions that prevailed generally during that time as to the presence, or absence, of snow and ice, the location of the walk, and its frequent, or infrequent, use by travelers. If, under all the attending circumstances, it could, in the discharge of its general duty to exercise ordinary care to maintain its streets in a reasonably safe condition for travel, have reasonably discovered and removed the obstruction of ice, or the danger arising from its presence, in time to have prevented the injury, then it should be held to have been negligent."

A city is not required to remove snow and ice from its sidewalks where such condition is general throughout the city. It is, however, the duty of the city to exercise reasonable care to keep its sidewalks free from dangerous conditions, which are not classed as a generally dangerous condition produced by natural causes such as snow and ice. Where snow accumulates on the sidewalk to such an extent that it produces a dangerous condition, not common to the general condition throughout the city, it is the duty of the city to exercise reasonable care to remedy such dangerous condition. [Albritton v. Kansas City, 188 S. W. 239, 240.]

In Reno v. City of St. Joseph, 169 Mo. 642, 656, the Supreme Court states the law thus:

"Or when snow and ice are permitted to accumulate upon a sidewalk of a city, and are permitted to remain there until by thawing and freezing they become an obstruction and the sidewalk unsafe for travel, and the city has knowledge thereof for a sufficient length of time before an accident and injury occurs, to one traveling thereon in the exercise of ordinary care, to remove the obstruction and fails to do so, it will be held to respond in damages for the injury. [Huston v. City of Council Bluffs, 101 Iowa, 33.]"

In Baker v. City of Jefferson, 155 Mo. App. 391, 392, the plaintiff recovered judgment for personal injuries caused by a fall on an icy sidewalk. In affirming this judgment, ELLISON, J., speaking for this court said:

"While there was a general condition of ice and snow over the entire city, yet there was abundant evidence tending to show that at the place where plaintiff fell the street did not present that usual condition resulting from a general fall of snow or sleet."

Measured by the rule announced in these cases the evidence in the case at bar, warranted the submission of the case to the jury. The evidence shows that the sidewalk where plaintiff fell was covered with snow and ice. A path approximately two feet wide in the center of the sidewalk was covered with ice about two inches thick. The snow on the sidewalk on either side of the path was thicker than the ice in the path. One witness testified that this snow was six inches deep in places. During the day this snow would melt and run into the path. At night the water would freeze. The sidewalk was in this condition for three weeks prior to plaintiff's injury. There was evidence that the snow drifted on this sidewalk. The snow in question fell sometime prior to January 1. On that day the snow was three and three-tenths inches deep on the ground. The temperature was above freezing on several days between January 1 and January 15. On January 7 there was only a trace of snow on the ground. A trace is described as less than one-tenth of an inch, too small to measure. This condition prevailed from January 7 to January 15, the date of plaintiff's injury.

Evidence that the snow drifted on this sidewalk at the time it fell; that there was only a trace of snow on the ground on January 7 and that no snow fell between that date and January 15, the date of plaintiff's injury, would justify the jury in finding that the condition of the sidewalk where plaintiff fell was produced by an unusual accumulation or drifting of snow not generally prevalent throughout the city.

The general demurrer to the evidence raises the question of plaintiff's contributory negligence. This point, however, is not pressed in this court. Plaintiff testified that she saw the ice on the sidewalk but could not see that it was slick; that other people had been walking over it and she never thought but what she could go safely over it.

The law does not require persons to abandon a sidewalk on account of a defect therein and cannot be convicted of contributory negligence in failing to do so unless the sidewalk is so glaringly dangerous and defective that an ordinarily prudent person would not attempt to pass over it. [Stephens v. City of Eldorado Springs, 190 S. W. 1004.]

The general and special demurrers to the evidence were properly overruled.

It is claimed that the court erred in giving plaintiff's instruction No. 2. That part of the instruction complained of required the jury to find that there had accumulated and existed on the sidewalk at the point in question, a large amount of rough, wavy, uneven, slick and slippery ice and snow which rendered the sidewalk dangerous and not reasonably safe for pedestrians passing over it. The contention made is that all sidewalks covered with ice and snow are dangerous, and for this reason the instruction as worded would permit the jury to find for plaintiff on a mere finding that the sidewalk was covered with ice and snow without a further finding that such ice and snow amounted to an obstruction dangerous to persons walking along said sidewalk.

The instruction is not subject to this criticism. We do not think the jury would understand from it that if the sidewalk was covered with snow and ice which had fallen thereon the city was liable. The instruction required the jury to find that a large amount of snow and ice had accumulated on the sidewalk which rendered same dangerous to public travel thereon. Webster defines the word "accumulate" to mean "to collect; to heap up in a mass or pile up." The accumulation of a large amount of snow and ice on a sidewalk is a far different thing from the sidewalk being covered with snow and ice which had fallen thereon. The instruction properly declared the law. [Reno v. City of St. Joseph, 169 Mo. 642, 656.]

The next and last contention of appellant is that the court erred in refusing its requested instructions "b," "c" and "d." Instruction "b" directed a verdict for defendant in event the jury found that the path in the sidewalk was rough and uneven solely because of persons traveling through the snow and slush. Instructions "c" and "d" were drawn on the theory that plaintiff was not entitled to recover unless the ice on the sidewalk was accumulated in mounds or ridges rendering the sidewalk dangerous to pedestrians traveling thereon. These instructions ignore the theory that plaintiff was entitled to recover even though the ice on the sidewalk was smooth and slick and for that reason dangerous to public travel, if the condition of such walk did not belong to a generally dangerous condition produced by natural causes. [Albritton v. K. C., 188 S. W. 239, 240.] For this reason these instructions were properly refused.

We find no reversible error in the record and accordingly affirm the judgment. *Williams, C.,* concurs.

PER CURIAM:—The foregoing opinion by FRANK, C., is hereby adopted as the opinion of the court. All concur, except *Trimble, P. J.,* absent.