LOTTIE NEWBERRY v. CITY OF ST. LOUIS, a Municipal Corporation, OTTILIA FENDLER and PHILLIPINA FENDLER, Appellants.—70 S. W. (2d) 546.

Division One, April 19, 1934.

2

*Charles M. Hay, Edgar H. Wayman, Jerome Simon* and *Oliver Senti* for City of St. Louis.

*John B. Sullivan* and *John P. Griffin* for respondent.

*James A. Waechter* for Ottilia Fendler and Phillipina Fendler.

FERGUSON, C.—This is an action to recover damages for personal

injury sustained by plaintiff when she "slipped and fell" on a sidewalk in the city of St. Louis at a place where, it is alleged, a "strip" of ice extended from the adjacent property upon and across the sidewalk. The owners of the adjacent property and the city of St. Louis are joined as defendants. The petition prays damages in the sum of $10,000. The verdict of the jury was against the defendant property owners, assessing damages in the amount of $1250, and in favor of the defendant city of St. Louis. Plaintiff's motion for a new trial as to defendant city was sustained and the city has appealed from the order granting the new trial as to it.

Grace Avenue in the city of St. Louis is a north and south street; Eiler Street runs east and west and intersects Grace Avenue. The defendants Fendler, own the residence property known as 5422 Grace Avenue, with garage at the rear of the dwelling house, situate at the northeast corner of the intersection of Grace Avenue and Eiler Street. The dwelling house fronts on Grace Avenue; the property extends east along and adjacent to Eiler Street and is bounded on the east by an alley running north and south parallel with Grace Avenue. The sidewalk along the north side of Eiler Street adjacent to this property is of concrete. The Fendler garage fronts on Eiler Street. The east wall of the garage is at about the west line of the alley. The garage was built some time after the sidewalk was built. The front of the garage is four or five feet north of the sidewalk and the sidewalk is about five feet in width. "The floor of the garage is about eighteen inches higher than the street." There is a concrete "ramp" from the street to the sidewalk and from the sidewalk to the door of the garage. The garage has a "gable roof;" there are no gutters and the water from the roof "runs into the yard and the alley." This sidewalk along the north side of Eiler Street between Grace Avenue on the west and Grand Boulevard on the east was a much-traveled way and was used daily by a large number of pedestrians. On January 17, 1930, plaintiff fell on the sidewalk at a point opposite the Fendler garage and suffered a broken leg. She testified that she had walked over this sidewalk daily for six weeks prior to that date, that being her customary route from her home to Grand Boulevard (the next street east of Grace Avenue) where she would "take a bus" to her place of work; that while there was very little ice, a few small spots, here and there on other parts of the sidewalk along the north side of Eiler Street for four days next preceding the date of her injury she had observed a "strip" of ice about two inches in thickness which extended from the front of the Fendler garage south entirely across the sidewalk; that during these four days she continued to walk over and across this strip of ice and did not slip or fall; that on the morning of the 17th, at about seven o'clock, she was walking east along this sidewalk toward Grand Boulevard; that a light snow

was falling and the sidewalk was then covered with snow "about as deep as a shoe sole;" that the entire sidewalk and this strip of ice, extending from the garage across the sidewalk, was covered with snow; that as she reached this point on the sidewalk her foot "slipped" on the ice, she fell to the sidewalk and was injured. Plaintiff stated on cross-examination that "she knew the ice was there all the time" and "knew it was there this morning" that she fell. There is no question that plaintiff fell at or near the point designated and that her right leg was broken. She was found in a sitting position upon the sidewalk, immediately thereafter, by other pedestrians. The first to arrive testified that as he approached plaintiff, who was then sitting on the sidewalk, he "slipped" upon the ice but as it was then covered with snow he could not describe the extent of the ice on the sidewalk. One witness for plaintiff testified that she walked along this sidewalk about "half past four" in the afternoon of January 16th (the day before plaintiff was injured) and this strip of ice which commenced at the door of the garage and "went over the sidewalk" was there at that time and that she had observed the same strip of ice "there two days before that" (January 14). Another witness also testified to having seen this strip of ice on the afternoon of the 16th and described the width, thickness and extent thereof about as stated by plaintiff. A man residing in that vicinity testified that he walked over this sidewalk "every morning to go to work" and that there had been ice on the sidewalk "in front of the garage for a week or so previous to the 17th" and that there was a strip of ice extending from the garage "across the sidewalk . . . to the street." Evidence on the part of defendants was to the effect that for some time before the 17th the sidewalk along the entire length of the Fendler property had been kept free and clear of ice and snow and that no such strip of ice opposite the garage or extending across the sidewalk, as described by plaintiff's evidence, existed; the son of one of the Fendlers' testified that he had "cleaned and swept" the sidewalk on the 16th and had done so daily for some time previous thereto. The evidence further was that there was a general and rather heavy fall of snow on the 17th, commencing at between three and four o'clock that morning and continuing until about eight o'clock in the evening of that day.

It is not here claimed that the plaintiff did not make a case for the jury as to the defendant city, the appellant. The separate answer of the defendant property owners was merely a general denial; the defendant city answered, separately, by a general denial and a plea of contributory negligence. We note this in view of the instruction on contributory negligence (numbered 7) offered by the defendant city and given by the trial court and the verdict of the jury. As the jury found against the defendant property owners and for the defendant city the verdict seems explainable only on the theory that

the jury found for the city under its instruction on contributory negligence. In granting the new trial as to the city the trial court specified of record as ground therefor, "error in giving Instruction No. 7 on contributory negligence, requested by said defendant" (city of St. Louis). The instruction reads:

"The Court instructs the jury that if you find and believe that plaintiff knew, or by the exercise of ordinary care for her own safety could have known, of the presence of the strip or accumulation of ice (if any) described in the evidence and negligently and carelessly failed to avoid stepping thereon, and that such negligence and carelessness of plaintiff, if any, contributed directly to cause the fall and injury, if any, to plaintiff, then your verdict must be for the City of St. Louis, and this is so, even though you find and believe that said strip or accumulation of ice constituted an obstruction on said sidewalk, and that the City of St. Louis was negligent in allowing and permitting it to remain thereon."

Plaintiff knew of the existence of this strip of ice about two and one-half feet in width extending across the sidewalk at this point opposite the Fendler garage. She had safely passed over the icy sidewalk at that point daily for four days next preceding the day she fell and was injured. A large number of other pedestrians had done likewise. On the morning of the 17th, the entire sidewalk and this strip of ice was covered with a thin layer of snow. Her knowledge of the ice at that point was a fact bearing upon the issue of whether she was negligent in the manner in which she proceeded upon and attempted to pass over the sidewalk. [Beauvais v. City of St. Louis, 169 Mo. 500, 69 S. W. 1043; Graney v. St. Louis, 141 Mo. 180, 42 S. W. 941; Chilton v. St. Joseph, 143 Mo. 192, 44 S. W. 766; Maus v. Springfield, 101 Mo. 613, 14 S. W. 630; Gryning v. Philadelphia, 13 A. L. R. 73.] While, in view of her knowledge of the condition there existing, she was bound to exercise reasonable and ordinary care under the circumstances yet she was not required, on approaching this point in the sidewalk, to desist from the use of, and leave or abandon, the sidewalk and go onto the street unless the existing condition was so obviously and glaringly dangerous that an ordinarily prudent person would not attempt to pass over the sidewalk, which was a question for the jury. [Chilton v. St. Joseph, supra; Kiefer v. City of St. Joseph (Mo.), 243 S. W. 104; Graney v. St. Louis, supra; Maus v. Springfield, supra; Fischer v. City of St. Louis, 189 Mo. 567, 88 S. W. 82; Megson v. St. Louis (Mo.), 264 S. W. 15; Wheat v. St. Louis, 179 Mo. 572, 78 S. W. 790; Neagle v. City of Edina (Mo. App.), 53 S. W. (2d) 1077; Harding v. St. Joseph, 222 Mo. App. 749, 7 S. W. (2d) 707; Combs v. City of Kirksville, 134 Mo. App. 645, 114 S. W. 1153; Lueking v. Sedalia, 180 Mo. App. 203, 167 S. W. 1152; Roberts v. St. Joseph (Mo. App.), 185 S. W. 1197; 43 C. J. 1082; Gryning v. Philadelphia, 13 A. L. R. 73.]

6

■ The negligence charged against plaintiff by the answer is that she failed "to watch the course and direction of her foot steps" and "the manner and direction in which she was walking and the condition of the sidewalk upon which she was walking" but the foregoing instruction does not direct a finding based upon the acts of negligence alleged in the answer, that is, failure to watch and give the attention required of an ordinarily prudent person to the course and manner in which she walked along the sidewalk at a place where she knew the icy condition existed. The implication conveyed is that since plaintiff knew, as she admitted, of the strip of ice across the sidewalk she was negligent in continuing her course along the sidewalk and in attempting to cross over the ice and that, under the circumstances, due care on her part required that she abandon the sidewalk and not attempt to pass over it at that point. As worded the instruction is susceptible of the construction, and doubtless carried the impression to the jury, that plaintiff's failure alone "to avoid" walking upon the sidewalk there and across the strip of ice, that is her failure to abandon the sidewalk upon reaching the place where the ice extended entirely across it constituted negligence though, as we have noted, the exercise of ordinary care did not require her to do so unless the condition was so obviously and patently dangerous that an ordinarily prudent person would not have attempted to use the sidewalk at that point. Viewed in the most favorable light to the defendant city and allowed the most favorable technical construction the instruction is nevertheless confusing and apt to mislead a jury and, as framed, should not, under the facts in this case and the answer herein, have been given. The order of granting a new trial is therefore affirmed. *Sturgis* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All the judges concur, except *Hays, J.,* absent.