Leona McINTYRE, a/k/a Leona Thompson, Plaintiff-Appellant,　—

v.

M. & K. DEPARTMENT STORE, INC., a Corporation, d/b/a Boxer's Department Store, Defendant-Respondent.

No. 32974.

St. Louis Court of Appeals.

Missouri.

Dec. 17, 1968.

Gregory D. O'Shea, St. Louis, for plaintiff-appellant.

Luke, Cunliff, Wilson, Herr, Chavaux & McCluggage, Adrian DeYong, Jr., St. Louis, for defendant-respondent.

DOERNER, Commissioner.

Plaintiff, a business invitee, slipped and fell while on defendant's premises, and brought this action to recover damages for the injuries she sustained. Trial to a jury resulted in a verdict and judgment for plaintiff in the amount of $4,000. The court sustained defendant's motion for judgment in accordance with its motion for a directed verdict on the grounds that plaintiff had failed to make a submissible case, and in the alternative sustained defendant's motion for a new trial. Plaintiff's appeal followed.

We review the evidence from a standpoint favorable to plaintiff. On June 12, 1963, plaintiff and a friend, Mrs. Alice Metcalf, were shopping in a locality in St. Louis known as the Cherokee shopping area. The day was dreary, and while it was not raining at the time of the occurrence in question, it had rained off and on earlier that morning and the streets were damp. Plaintiff and Mrs. Metcalf were looking for slacks for their respective sons. About 11:-00 A.M., they saw a pair in the window of

defendant's store, located at 2738 Cherokee Street, which interested them and they entered the store. Plaintiff informed defendant's manager, Stanley Boxer, that she desired to look at the trousers she had seen in the shop window, and Boxer asked her to show him the pair she had in mind. For that purpose Boxer, plaintiff, and Mrs. Metcalf walked out the front door and into the vestibule, in that order, according to plaintiff, and after plaintiff had taken a few steps towards her left she slipped and fell in what she described as "dirty mud" on the floor of the vestibule. Without objection plaintiff related: "Well, I laid there, I guess just a second, and I said, 'My, how I fell so hard,' and he (Boxer) said, 'I guess you slipped,' and he said, 'Oh, God, you got hurt, and I guess you slipped in that mud I should have cleaned up awhile ago.'" Plaintiff also testified that after Boxer and Mrs. Metcalf had helped her to her feet she observed, " * * * dirty mud, like little sticks sticking to it * * *" on her raincoat, and also saw that the dirty mud on the floor of the vestibule " * * * had tracks where people had walked into it."

The record leaves a great deal to be desired as to the size and shape of the vestibule, the area of the floor which was covered with the dirty mud, and the precise point where plaintiff slipped and fell. Plaintiff described the vestibule as having a "wide entrance," and being " * * * hexagon shaped, or fan shaped * * *." Mrs. Metcalf, on cross-examination, indicated that the width of the vestibule at the front door was as wide as " * * * from the rail of the jury box over to the court reporter's desk," but no estimate of the number of feet was given. Plaintiff stated the vestibule had a tile floor composed of hexagon tiles, "like the old fashioned bathroom floors," white in color with blue trim. On cross-examination plaintiff was asked to mark on defendant's photograph the spot where she had fallen, but after an objection had been made by her counsel and overruled by the court the request was not pressed, and she

ended up pointing to some place on the exhibit and stating that she fell, " * * * in this area (indicating)." There was no testimony from any witness regarding the extent of the dirty mud on the floor of the vestibule. We gather from the testimony and the defendant's photographs filed with us that the building in which defendant's store is located fronts on the south side of Cherokee Street, and is flush with the edge of the sidewalk. An open vestibule, generally rectangular in shape, is recessed into the building, with show windows on its east and west side. Across the south side of the vestibule are double glass doors giving access to the store, with fixed glass panels on either side. The show windows on the west side of the vestibule do not form a straight line from the sidewalk towards the south, as there is a shallow recess or reverse-bay in them which was referred to in the testimony as an "insert." The floor of the vestibule slopes slightly from the double doors to the sidewalk.

Plaintiff testified that when she and Mrs. Metcalf entered defendant's store they walked through the vestibule in a direct line from the sidewalk to the doors, that as she did so she was looking at the slacks in the show window in which she was interested, and that she did not look at the floor or observe mud on it. She further related that during the time she was in the store, a period she estimated as three minutes or less, she saw mud on the floor with tracks in it. And she stated that when she and Boxer left the store and entered the vestibule she walked towards her left, in the direction of the insert in the show windows on the west side of the vestibule, looking all of the time at the trousers, and was in the act of pointing them out to Boxer when she slipped and fell. As best we can determine, plaintiff indicated that the place where she slipped and fell was near the southern part of the insert.

Mrs. Metcalf's testimony corroborated that of plaintiff's in all essential respects,

but her recollection of what Boxer said immediately after plaintiff fell was, " * * 'I should have cleaned that mud up.' " To a certain extent Boxer's testimony agreed with that of plaintiff's, for he testified as to plaintiff's appearance in the store, the interest she expressed in the slacks in the show window, their entrance into the vestibule for the purpose of ascertaining which pair she had in mind, and, in part, plaintiff's fall. On cross-examination Boxer stated that no special housekeeping procedures were followed on a rainy day, other than to place a rug on the floor inside the store to protect it from water tracked in by customers; that the only cleaning done of the vestibule was to sweep it, and the mopping of it on Saturday by a high school boy; and he agreed that on a rainy day it was possible that people would track things in to the vestibule on their feet.

Although plaintiff alleged in her petition that defendant failed to remedy the dangerous condition or to warn her of its existence, by her verdict directing instruction she submitted her case on only one of those specifications of negligence, that of defendant's failure to remove the "mud and rain" from the floor of the vestibule. No reference was made therein to defendant's alleged failure to warn, and that charge of negligence was therefore abandoned by such nonsubmission. Wiber v. Mana, Mo., 356 S.W.2d 88; Burnett v. St. Louis Public Service Co., Mo., 337 S.W.2d 921; McFarland v. Wildhaber, Mo., 334 S.W.2d 1. Accordingly, our review of the trial court's action in sustaining defendant's after trial motion for judgment and rendering judgment for defendant is limited to the only issue plaintiff submitted. Guthrie v. City of St. Charles, 347 Mo. 1175, 152 S.W.2d 91; Hammontree v. Edison Bros. Stores, Mo. App., 270 S.W.2d 117; Lowes v. Union Elec. Co., Mo.App., 405 S.W.2d 506.

The fundamental basis of a proprietor's liability in a case of this nature is his superior knowledge of the dangerous or defective condition of his premises which results in the injury to his business invitee, Gruetzemacher v. Billings, Mo., 348 S.W.2d 952; Howard v. Johnoff Restaurant Co., Mo., 312 S.W.2d 55; Vogt v. Wurmb, 318 Mo. 471, 300 S.W. 278; and the proprietor's failure, in the exercise of ordinary care, "(i) to make the condition reasonably safe" if he "(b) has no reason to believe that they (the invitees) will discover the condition or realize the risk involved therein," 2 Restatement of the Law, Torts, § 343. Relying in the main on McKeighan v. Kline's, Inc., 339 Mo. 523, 98 S.W.2d 555, defendant urges that plaintiff's evidence wholly failed to establish, first, that defendant had any knowledge, actual or constructive, of the dirty mud on the floor of its vestibule; and second, that if such knowledge was shown, plaintiff's evidence failed to establish that defendant was possessed of such knowledge for a sufficient length of time in which to have remedied the condition. It is true that in this case, as in McKeighan, there was no evidence that the condition had existed for a half-hour, an hour, or any specific period of time. But in McKeighan there was no showing of any actual knowledge on the part of the storekeeper of the existence of the dangerous condition, and the element of time was primarily important as it related to the factor of constructive knowledge. However, in the instant case plaintiff relied on actual knowledge on the part of defendant as revealed by Boxer's statement, not on constructive knowledge, and the factor of time is of importance only as it relates to the issue of whether defendant was aware of the dangerous condition for a sufficient length of time in which, in the exercise of ordinary care, it could have remedied the condition.

Thus in the final analysis our decision hinges on the inferences to be drawn from Boxer's statement. We cannot agree with defendant's interpretation of that statement, or its conclusion that we may hold, as a matter of law, that it wholly fails to

show actual knowledge of the hazardous condition and such knowledge for a sufficient length of time in which to have made the premises reasonably safe. We are of the opinion, and hold, that from the latter part of Boxer's statement (" ' * * * that mud I should have cleaned up awhile ago.' ") the jury might reasonably infer both that Boxer had prior actual knowledge of the existence of the mud on the floor of the vestibule, and that he possessed such knowledge for a sufficient length of time to have remedied the condition before plaintiff fell and was injured. It follows that as to those issues the plaintiff made a submissible case.

■ Defendant also asserts that plaintiff was guilty of contributory negligence as a matter of law in failing to see the open and hazardous condition of the floor of the vestibule, and that the action of the trial court in sustaining its after-trial motion was proper for that reason. Defendant cites Sprague v. Riley, Mo.App., 427 S.W. 2d 263, and Wilburn v. Southwestern Bell Telephone Co., Mo.App., 382 S.W.2d 49, but those cases presented substantially different factual situations. And as our Supreme Court said in Summa v. Morgan Real Estate Co., 350 Mo. 205, 165 S.W.2d 390, 393: "There is no exact test or formula by which it may be determined whether or not a condition is so open and obvious that one is bound to see it. Each case must depend on its own facts and circumstances. * * " In that case a customer of a grocery store had dropped a half pint bottle of French dressing which had broken and the contents spread out a distance of ten or twelve inches in an aisle. An employee had disposed of the broken glass and was mopping up the dressing when he saw plaintiff approaching and spoke a warning. Plaintiff testified that she did not hear any warning, see anything on the floor, or notice the employee mopping it. The court there held (165 S.W. 2d 394): " * * * it is our opinion that under all the facts and circumstances whether the condition complained of was so obvious that the respondent was bound to see it and whether she was contributorily negligent in not observing it were both questions of fact for the jury's consideration * * *."

As we have observed, there was no evidence adduced as to the area covered by the mud in which plaintiff slipped and fell, and for aught that appears in this record it may have been no greater, if as large, as the area covered by the spilled dressing in Summa. Furthermore, plaintiff testified that when she walked through the vestibule on her way into defendant's store, and when she came out with Boxer, her attention was focused on the pair of slacks in the window which she was interested in purchasing, and that she did not observe the mud on the floor. Her distraction was natural and understandable, for as Boxer conceded on cross-examination, the very purpose of the show windows was to display defendant's merchandise in them so that the public would see such merchandise and be attracted into the store to purchase it. That obviousness will not bar a recovery in all cases is shown by § 343A incorporated in Restatement of the Law, Torts 2nd, and the illustrations given in Comment f. And even previous knowledge of a hazardous condition and momentary forgetfulness does not, in all cases, bar an injured party from recovery. Harbourn v. Katz Drug Co., Mo., 318 S.W.2d 226, 74 A.L.R.2d 938; Stocker v. J. C. Penney Co., Mo.App., 338 S.W.2d 339; Butler v. City of University City, Mo. App., 167 S.W.2d 442. In the light of the circumstances here presented we are of the opinion that the issue of plaintiff's contributory negligence was properly one for the jury. Burch v. Moore's Super Market, Inc., Mo., 397 S.W.2d 590; Harbourn v. Katz Drug Co., supra; Summa v. Morgan Real Estate Co., supra. And if, as defendant asserts, the court sustained defendant's after-trial motion and rendered judgment for defendant on that ground it erred in so doing.

■ In granting defendant a new trial, in the alternative, the trial court did so without specifying of record the ground or grounds on which it acted. Civil Rule 83.06 (b), V.A.M.R., provides that in such an event "* * * the presumption shall be that the trial court erroneously granted the motion for new trial and the burden of supporting such action is placed on the respondent. * * *" Drake v. Hicks, Mo., 261 S.W.2d 45. In an effort to discharge that burden defendant asserts that the basis of the trial court's action was (1) an improper and prejudicial closing argument by plaintiff's counsel; and (2) because the verdict was excessive. The fatal weakness in defendant's position, however, is that in the absence of the specification of those grounds by the trial court we may not presume that the new trial was granted on either of such grounds. For both fall within the category of discretionary grounds. See Ryan v. Campbell "66" Express, Inc., Mo., 304 S.W.2d 825, and Bierman v. Langston, Mo., 304 S.W.2d 865. And Civil Rule 83.-06(c) provides that, "If the trial court grants a new trial without specifying discretionary grounds, it shall never be presumed that the new trial was granted on any discretionary grounds."

For the reasons stated the judgment and order are reversed and the cause is remanded with directions to reinstate the judgment for plaintiff.

PER CURIAM:

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court. Accordingly, judgment and order reversed and cause remanded with directions to reinstate judgment for plaintiff.

ANDERSON, P. J., RUDDY, J., and ELGIN T. FULLER, Special Judge, concur.