W. R. O'CONNELL, Administrator of the Estate of Annabelle O'Connell, Deceased, and Robert O'Connell, Plaintiffs-Appellants and Respondents,

v.

ROPER ELECTRIC COMPANY, INC., Defendant-Appellant,

and

Omar M. Roper and Alma C. Roper, Defendants-Respondents.

Nos. 9276, 9277.

Missouri Court of Appeals, Springfield District.

Aug. 10, 1973.

Motion for Rehearing or to Transfer to Supreme Court Overruled Aug. 28, 1973.
Application to Transfer Denied Oct. 8, 1973.

Thomas Strong, William J. Hart, Horace S. Haseltine, Springfield, for plaintiffs-appellants and respondents, W. R. O'Connell, Annabelle O'Connell and Robert O'Connell.

Glenn A. Burkart, Buell F. Weathers, Springfield, for defendant-appellant Roper Electric Co., Inc.

Russell G. Clark, Springfield, for defendants-respondents Omar M. Roper and Alma C. Roper.

BILLINGS, Judge.

This is a suit for personal injuries by a wife and resulting damages to her husband, arising from the wife's slip and fall on an ice-coated driveway which was used as a walkway to a business office. Plaintiffs Annabelle and Robert O'Connell were awarded jury verdicts of $30,000.00 and $7500.00, respectively, against defendant Roper Electric Company, Inc., and the jury exonerated individual defendants Omar Roper and Alma Roper. Defendant Roper Electric Company has appealed from the judgment in favor of the plaintiffs and the plaintiffs have appealed from the judgment entered in favor of the individual defendants. By stipulation of the parties the appeals were consolidated in this court.[1] We affirm the judgment.

On January 2, 1970, Omar Roper was the owner of property located at 2218 North Howard, a north-south street in Springfield. He and his wife, Alma, resided in a house which was located near the street and which faced west. Behind the Roper residence was a two-story structure housing Roper Electric Company and which was orally leased to Roper Electric Company by Mr. Roper for $160.00 monthly rental. Mr. Roper was president of Roper Electric Company, Mrs. Roper was vice-president of the corporation, and a son was the secretary-treasurer of the firm. Plaintiff Robert O'Connell was an

---

1. Mrs. O'Connell died on October 1, 1972, and her administrator has been duly substituted as a party in these appeals.

employee of Roper Electric Company and a brother of Mrs. Roper.

Access to the office of Roper Electric Company was by way of a paved driveway which was located north of the Roper's residence. The driveway commenced at the east curb line of Howard Street and sloped up and east, crossed a north-south sidewalk, and continued on an upslope eastward to Roper Electric Company. A curbing and wrought iron fence separated the driveway from the Roper yard. Signs painted on both sides of the curbing of the driveway just east of the sidewalk, directed "Please Park In Street". The only vehicular traffic permitted to use the driveway was as follows: the Roper's neighbor [owner of the north half of the drive] who lived just north of the driveway and whose garage was located at the northeast end of the drive; various delivery vehicles who had business with Roper Electric Company; sometimes, a dairy truck which delivered milk to the Roper residence; motor vehicles owned by Roper Electric Company, including a station wagon and an automobile furnished Mr. and Mrs. Roper by the corporation—usually parked at the rear of their residence. In addition to the limited vehicular use of the driveway it was also used as a sidewalk or walkway from Howard Street to Roper Electric Company's office by the company's employees, customers and salesmen who called on the firm. Such persons were required to park their motor vehicles on Howard Street and walk up the driveway to the office.

The portion of the driveway between the east curb line of Howard Street and the sidewalk was constructed at the time the street was paved in the 1930's and the cost of this "approach" was assessed against the abutting property and included in the paving tax bill paid by Mr. Roper. Roper Electric Company had thereafter paid the cost of paving the remaining portion of the driveway and paid for the maintenance of the driveway, including prior snow and ice removal. The signs directing street parking were painted on the curbing when the driveway was paved "many years" prior to January 2, 1970.

Between December 28, 1969 and January 1, 1970 there had been intermittent snow in Springfield and sub-freezing temperatures.[2] Snow and ice had been removed from many of the city's major streets by January 2, but Howard Street had not been cleaned. During this period the driveway to Roper Electric Company had not been cleaned, nor had any gravel, sand, cinders, salt or other substance been placed on it. On January 2 the surface of the driveway was rough, rutted and had dips and gulleys of ice [caused by vehicular traffic and "spinning of tires"] and that portion of the drive between the curb line of Howard Street and the sidewalk was more rutted and ridged with ice than the rest of the drive. Mr. Roper described the condition of the driveway on the morning of January 2 as "dribbly" ice, "ridged", "so if you step on it and not hold your balance, you might fall". Snow and ice were mounded up on the curbing of the drive. Employees of Roper Electric Company who walked up the driveway the morning of January 2 had to "zigzag" and "pick" their way up the "very slippery" drive because of the rough, humped and rutted ice and snow.

Friday, January 2, was payday for employees of Roper Electric Company. It was a common practice for the wives of some employees to stop by the firm's office and pick up their husband's paycheck while such employees were at work on jobs away from the office. The firm considered this a benefit to it and the employees. Mrs. O'Connell decided to pick up and deposit her husband's check since Mr. O'Connell's

2. Snow accumulations at 6 o'clock a. m. for the period December 29 through January 2 and the low and high temperatures for the day were as follows: December 29, one inch, 24–31; December 30, three inches, 15–26; December 31, seven inches, 15–22; January 1, seven inches, 15–35; January 2, five inches, 7–26. On January 1, slightly more than 7 hours of sunshine was recorded by the weather bureau.

job with Roper Electric Company as material expediter required him to work at various locations in Springfield. About 1:30 o'clock in the afternoon she parked her car on the east side of Howard Street just short (south) of the driveway leading to the company office. She walked around the front of her car, walking without difficulty on "crunchy" ice which permitted her feet to go through the crust. When she reached the end of the drive, in a low spot at the southwest corner she saw the drive was covered with "thick", "humpy", ice. The parkway [grassy area between the north-south sidewalk and the street] was "all piled up" with snow and ice and "wasn't safe looking to step on." Between where she was standing and the sidewalk she saw an area "big enough to put both feet in" which appeared to her to be dry concrete. This area was located on the south half of the driveway and "just a good step from where the street and this approach met together." She said she intended to put both feet in the clear spot and look for her next step from there and if she found she could not go on safely she intended to turn around and return to her car. When Mrs. O'Connell stepped on what she thought was a dry spot on the driveway with her right foot she slipped and fell on clear ice, fracturing her right wrist and right hip.

Roper Electric Company did not offer any evidence. As a part of Mr. Roper's [and his wife's] evidence a plat was received in evidence showing that the dedicated portion of Howard Street adjoining the Roper property was sixty feet in width. In addition, Mr. Roper was permitted to testify that the west edge of his property was within three inches of the retaining wall along his front yard—at the east edge of the east sidewalk. He arrived at this *conclusion* by measuring the distance from the west edge of the west sidewalk of Howard Street to the east edge of the sidewalk in front of his home and this measurement was fifty-seven feet and nine inches.

Roper Electric Company contends plaintiffs did not make a submissible case of negligence against it and its motion for a directed verdict at the close of the evidence should have been sustained by the trial court, because (a) the area where Mrs. O'Connell fell was part of a public right-of-way, (b) the area in question was part of a common way, and (c) the condition of the place where Mrs. O'Connell slipped and fell was an open and obvious one.

As to (a) Roper Electric Company argues that the owner or occupier of land abutting a public right-of-way has no duty to use reasonable care to keep the abutting right-of-way clear of ice and snow [Stith v. Newberry Co., 366 Mo. 467, 79 S.W.2d 447 (1934); Morgan v. Kroger Grocery & Baking Co., 348 Mo. 542, 154 S.W.2d 44 (banc 1941)], and, in support of (b) contends the principles found in landlord and tenant cases such as Fitzpatrick v. Ford, 372 S.W.2d 844, 849 (Mo.1963), should govern any duty owed Mrs. O'Connell. We disagree. We have no quarrel with the rules of law enunciated in such cases but deem such rules do not apply to the instant case because they do not govern the liability of an abutting property owner or occupant for an injury sustained on that part of a public right-of-way which the abutting owner or occupier makes a special use thereof for his own benefit and convenience.

■ An abutting landowner's or occupier's right to use the property within a right-of-way includes the right to construct a connecting driveway from his premises to the public street. State v. Hoffmann, 132 S.W.2d 27 (Mo.App.1939); 39 Am. Jur.2d, Highways, Streets and Bridges, § 181 (1968). Also see State v. Meier, 388 S.W.2d 855 (Mo. banc 1965). In the case before us we find that the paved portion of the driveway where Mrs. O'Connell fell was a public improvement constituting an extension of the public street or public sidewalk 63 C.J.S. Municipal Corporations

§ 1048 (1950). Thereafter Roper Electric Company paved the remainder of the driveway up to its office and paid for the cost of maintenance of the entire driveway. Further, that Roper Electric Company made a special use of the entire driveway, for its own benefit and convenience as a "private" means of ingress and egress to the company's office and attempted to restrict the use thereof.[3] Except for limited vehicular use before referred to, the evidence was undisputed that the driveway was required to be used as a *walkway* for persons having business with Roper Electric Company.

We are of the view and hold that the rule spelled out in Martin v. Gilmore, 358 S.W.2d 462 (Mo.App.1962), governs the liability of Roper Electric Company in this case. In Martin a private driveway was maintained across a public sidewalk by the defendant—an abutting owner—for trucks entering and leaving its premises. Defendant contended he had no duty to repair or maintain the public sidewalk abutting his property. In rejecting this argument, the court said at page 464: "It may be conceded, as a general rule, that a property owner owes no duty to the public to maintain an abutting sidewalk in a safe condition. The obligation to the public rests on the city, and not on the abutting property owner. That rule, however, is not absolute. It yields to the qualifying principle that an *abutting property owner who makes a special use of the sidewalk is under a duty to exercise reasonable care to maintain that part put to his special use in a reasonably safe condition for use by the public.* Thus, the abutting owner or occupant will be liable where he uses the sidewalk for his own private benefit or convenience and fails to exercise reasonable care to prevent injury to persons lawfully

using the way. 63 C.J.S. Municipal Corporations § 861; Moore v. Monarch Gasoline & Oil Co., 225 Mo.App. 115, 35 S.W.2d 669. Particularly referable to the facts in this case is the following statement quoted from C.J.S., above cited: 'Where a sidewalk is used as a driveway for vehicles by an abutting owner or occupant, the special use carries with it the duty not to permit the use to create conditions unsafe for the passing thereon of pedestrians, or if it does create such conditions not to allow them to remain for an unreasonable length of time, such owner's duty being to exercise reasonable care and diligence in the keeping of the driveway at the point where it was superimposed upon the sidewalk in a proper and safe condition for the passage of pedestrians rightfully using the sidewalk.'" And, after reviewing Missouri decisions, the court, at page 465 said: " . . . [T]hat a property owner who makes a special use of an abutting sidewalk, for his own benefit and convenience, assumes the duty to exercise reasonable care to guard the public from injury to such use." Here, the special use of the particular area by Roper Electric Company as a driveway and walkway imposed a duty on the company, as abutting occupier, to exercise reasonable care and diligence to keep and maintain it in a proper and safe condition.

■ In its brief Roper Electric Company states it is debatable whether Mrs. O'Connell, at the time of her fall, occupied the status of an invitee or a licensee. The Company candidly admits that in view of Wells v. Goforth, 443 S.W.2d 155 (Mo. banc 1969) the distinction between the two, and the duty owed by a possessor of land, was, insofar as most purposes abolished.[4] However, under the fact here presented we entertain no difficulty in determining that

3. We do not believe the defendants, or any of them, could lawfully divert that part of the driveway within the street so that it could not be considered open for public use generally. See City of Poplar Bluff v. Knox, 410 S.W.2d 100, 103 (Mo.App.1966).

4. In Claridge v. Watson Terrace Christian Church, 457 S.W.2d 785 (Mo. banc 1970) at 786 the court said: "To avoid possible confusion, and for reasons we hope to make apparent, we point out that the instant case was tried prior to our recent opinion

Mrs. O'Connell was an invitee since the purpose of her trip to Roper Electric Company's office was of "real benefit or interest" [Richey v. Kemper, 392 S.W.2d 266, 268 (Mo.1965)], to the firm, or, the purpose was one whereby the parties were "mutually benefitted" [Etchison v. Lusk, 195 Mo.App. 188, 195, 190 S.W. 345, 348 (Mo.App.1916)]. Restatement of the Law, Torts 2d, § 332(3) (1964).

"An invitation to enter premises carries with it the duty towards the persons invited to provide reasonably safe means of ingress and egress and where the invitation is to a particular part of the premises, there is a duty to maintain *the approaches* thereto in a reasonably safe condition for use." Olds v. St. Louis Nat. Baseball Club, 232 Mo.App. 897, 905, 104 S.W.2d 746, 751 (1937) (our emphasis). Similar authority is found in Cannon v. S. S. Kresge Co., 233 Mo.App. 173, 116 S.W.2d 559 (1938); Olds v. St. Louis Nat. Baseball Club, 119 S.W.2d 1000 (Mo.App.1938); and 65 C.J.S. Negligence § 63 (1966). In this connection it has been held that lack of actual dominion or control over the approach used by pedestrians to a place of business does not lessen the duty. Cannon v. S. S. Kresge Co., supra; Evans v. Sears, Roebuck And Company, 104 S.W.2d 1035 (Mo.App.1937). Roper Electric Company's contentions are denied.

Roper Electric Company's third ground of attack on the submissibility of plaintiff's claims is that the condition of the place of Mrs. O'Connell's fall was an "open and obvious one" and that it had no superior knowledge, relying on such cases as Sprague v. Riley, 427 S.W.2d 263 (Mo.

App.1963) and Wilburn v. Southwestern Bell Telephone Co., 382 S.W.2d 49 (Mo. App.1964). These cases, as well as others, are authority for denying recovery to a plaintiff who is injured in a slip and fall where the place of injury is a dangerous condition that is open and obvious.

In the Sprague case the plaintiff had knowledge of the overall dangerous condition [raining, snowing, freezing, and the wind blowing] and had at least constructive knowledge of the particular hazardous condition at the spot where the fall occurred. Additionally, the plaintiff in the Sprague case was carrying crates in such a way that he could not see the sidewalk and he knew that the sidewalk was slippery. In ruling the case the court observed (1. c. 266): "He encumbered himself in such a manner as to be unable to see what was obvious." In Wilburn v. Southwestern Bell Telephone Co., supra, the plaintiff urged that since she should be given the benefit of all evidence favorable to her, the court should infer there was a considerable amount of water on the floor where she fell. In response the court stated that even if it could make such an inference it would not be of help to plaintiff as such a condition would have been open and obvious. Also see Sellens v. Christman, 418 S.W.2d 6 (Mo.1967); Douglas v. Douglas, 255 S.W.2d 756 (Mo.1953); Murray v. D'Oench Co., 347 Mo. 365, 147 S.W.2d 623 (1941); Ilgenfritz v. Missouri Power & Light Co., 340 Mo. 648, 101 S.W.2d 723 (banc 1937). All of these cases are authority for the rule that an owner or occupant of premises is not liable for injuries to a licensee-invitee where the alleged dan-

in Wells v. Goforth, Mo., 443 S.W.2d 155, in which the duty of a possessor of land to a 'licensee' thereon was broadened by the adoption of the rule in 2 Restatement, Law of Torts, First, Section 342. The adoption of this new rule, for all practical purposes, makes the duty owed a licensee or an invitee by a possessor of land essentially the same, i. e., reasonable care to make the premises reasonably safe. However, a vital distinction remains as to what factual situation must prevail to create the duty, or in other words,

the circumstances which must exist before the duty is imposed for the benefit of each. That is: (1) The duty is owed a licensee if the possessor of the land 'knows' of the condition complained of, Wells v. Goforth, supra, whereas, (2) the duty is owed an invitee if the possessor of the land, 'knows, or by the exercise of reasonable care could discover' the condition complained of. Harbourn v. Katz Drug Co., Mo., 318 S.W.2d 226, 228."

gerous condition was open and obvious. However, they do not attempt to lay down the exact test to be followed in determining whether the spot of injury was an open and obvious condition as a matter of law.

The Missouri Court of Appeals—St. Louis District refused to follow the Sprague and Wilburn cases in McIntyre v. M. & K. Department Store, Inc., 435 S.W.2d 737, 741 (Mo.App.1968) because " . . . [T]hose cases presented substantially different factual situations." In Summa v. Morgan Real Estate Co., 350 Mo. 205, 214, 165 S.W.2d 390, 393 (Mo. 1942) the Supreme Court said: "There is no exact test or formula by which it may be determined whether or not a condition is so open and obvious that one is bound to see it. Each case must depend on its own facts and circumstances." Thus in Burch v. Moore's Supermarket, Inc., 397 S.W.2d 590 (Mo.1965) the court could not say that the dangerous condition resulting from a patch of ice was so obvious and glaring that a reasonably prudent person would have not used the parking lot. And, more recently in Claridge v. Watson Terrace Christian Church, 457 S.W.2d 785 (Mo. banc 1970), it was held to be a jury issue where the plaintiff testified the spot where she fell *appeared* to be dry although she noticed a damp spot nearby.

■ Here, Mrs. O'Connell, in attempting to scale an icy walkway, slipped and fell on a spot which appeared to her to be dry and which from her view was the only safe means of approach to Roper Electric Company's office. The driveway was the means of access to Roper Electric Company and although it was covered with "thick", "humpy", "rutted", and "slippery" ice, employees of the company had traversed the driveway earlier in the day even

though it was "very slippery", [the ice] was "thinner in some spots and real heavy in others", "tires had spun on the driveway". Such foot travel up the driveway had been accomplished by being "very careful", "cautious", "picking" and "zigzagging". Mrs. O'Connell testified that she stepped to the area that appeared to be clear of ice, intending to put both feet there and looking for her next step from that spot—and if she could not safely proceed, to return to her car. Roper Electric Company's position overlooks the humps and ruts to be stepped over and the thick and thin ice which was present on its access. As stated in Newberry v. City of St. Louis, 335 Mo. 1, 5, 70 S.W.2d 546, 548 (1934): " . . . [S]he was not required, in approaching her point . . . to desist from the use of, and leave or abandon, the [walkway] unless the existing condition was so obviously and glaringly dangerous that an ordinary prudent person would not attempt . . . it." Also see Boulch v. John B. Gutmann Const. Co., 366 S.W.2d 21 (Mo.App.1963). Roper Electric Company's contention also overlooks the fact that the firm's own employees had, with difficulty, used the walkway earlier. Under the facts here presented we cannot say that the condition which caused Mrs. O'Connell's fall and injuries was so obvious and glaring that a reasonably prudent person would not have used the driveway-walkway to the office of Roper Electric Company. The question was properly submitted to the jury under a contributory negligence instruction.[5]

■ Complaint is made that an unnecessary, material and prejudicial deviation from the form of verdict instruction given at plaintiffs' request was made and this calls for a reversal of the judgment against Roper Electric Company. This in-

5. In view of our ruling we need not consider plaintiffs' further argument that the open and obvious rule does not apply where the slickness is not uniform, citing Ilgenfritz v. Mo. Power and Light, 340 Mo. 648, 101 S.W.2d 723 (Mo. banc 1937) ; that the rule is inapplicable where the spot was very slippery had existed over a long period of time, citing Dixon v. General Grocery Co., 293 S.W.2d 415 (Mo.1956) ; and, that the rule does not apply where the condition and risk are deceptive, quoting Restatement of Law of Torts 2d, § 343A.

struction, modifications of MAI 36.05, 36.-07 and 36.08, covered the forms of verdict possible between the parties [including the individual defendants] on both Counts I and II. The error charged is that the instruction told the jurors two times that "nine or more jurors may return a verdict for any party in this case". The first occasion was the beginning of the instruction wherein the first paragraph of MAI 36.05, 36.06 and 36.07 was set forth. The repetition occurred near the end of the instruction in the paragraph preceding "If less than twelve jurors etc.," and followed the same language as in the introductory paragraph.

Roper Electric Company argues that since nine jurors returned the verdicts against them in favor of the plaintiffs this necessarily demonstrates the prejudicial effect of the instruction. This argument overlooks the fact that nine-juror verdicts were returned *against* plaintiffs in favor of the individual defendants, and although concededly the instruction was repetitious it did not deviate from the language approved in MAI. Roper Electric Company's reliance on cases wherein there was a deviation from the language of an MAI instruction or where it was held not error to refuse an instruction which was repetitious of another instruction, are not controlling.

This case involved multiple plaintiffs, multiple defendants and separate counts and of necessity called for some modification of the approved instructions. We do not approve the repetition here complained of but, nevertheless, do not find the same to be prejudicial. The words are a correct statement of the law and are wholly neutral as evidenced by the jurors verdict in favor of and against the plaintiffs. Immediately preceding the repetition the jury was instructed that if their verdict was in favor of any defendant or defendants on plaintiff Annabelle O'Connell's claim, then they must return a verdict in favor of such defendant or defendants on the claim of Robert O'Connell. All alternatives were presented by the forms of verdict [Bower v. Hog Builders, Inc., 461 S.W.2d 784 (Mo.1970)]; the instruction was substantially correct and the jury was not misled [Gormly v. Johnson, 451 S.W.2d 45 (Mo. 1970)]; and, although error is present, we rule it non-prejudicial.

 Roper Electric Company next levels a two-pronged attack on paragraph three of plaintiffs' verdict directing instructions which were modifications of MAI 22.04. The instructions, one for Mrs. O'Connell and the other for her husband, contained the following: "Third, the portion of the driveway west of the city sidewalk was covered with rough, ridged and hummocked ice and as a result that portion of the driveway was not reasonably safe for pedestrians, and . . . ." The instructions were not supported by the evidence and included evidentiary details and undisputed facts, contrary to MAI, says Roper Electric Company.

Roper Electric Company's first criticism is that while the instruction hypothesized a rough, ridged, hummocked condition of ice, Mrs. O'Connell slipped and fell on clear ice. We do not deem it necessary to again detail the evidence of the unnatural condition of accumulated snow and ice on the driveway-walkway. However, by reason of the described conditions she had to step up and over the "humps". She was given what appeared to be only one safe way. If the ice and snow had been removed, or if there had been sand or cinders on the ice and snow there would have been no danger. If there had been no ridges, she would not have stepped into a slick rut or valley—which was clear ice that appeared to be a bare spot. In our view such a detailed hypothesization as suggested by Roper Electric Company would be evidentiary, not an ultimate fact as required under MAI. Zipp v. Gasen's Drug Stores, Inc., 449 S.W.2d 612 (Mo.1970). And, as was stated in Boten v. Brecklein, 452 S. W.2d 86 (Mo.1970), at 93: "Moreover, if defendants were of the view that there was no applicable MAI form and that the one offered was too general it was their duty

to offer a more specific one. Miller v. Ranson and Co., Mo.App., 407 S.W.2d 48."

■ The last complaint is directed towards the first two paragraphs of the verdict directors and that portion of the third paragraph describing the portion of the driveway where Mrs. O'Connell fell as being covered with rough, ridged, hummocked ice. It is charged that these portions of the instruction violate Rule 70.-01(e), V.A.M.R., because they contain evidentiary details and undisputed facts.[6] Paragraphs one and two are as follows: "First, before January 2, 1970, employees, wives of employees, and persons having business at the office of the Roper Electric Company commonly walked from the street up the driveway to the office of Roper Electric Company, and second, defendant, Roper Electric Company knew that such persons so used the driveway and did not object to such use, and . . .."

Plaintiffs contend that this criticism of the instructions is at war with Roper Electric Company's earlier contentions that the evidence was insufficient to raise a duty towards Mrs. O'Connell. A resolution of this proposition is not necessary to our opinion and we turn our attention to the alleged violation of Rule 70.01(e). We are of the opinion that although possibly inartfully drawn, the instructions submitted ultimate facts and was not prejudicially erroneous. It was necessary to submit the ultimate fact that the place where Mrs. O'Connell slipped and fell was commonly used as a *walkway* to the office of Roper Electric Company by persons occupying a particular status and that this use of the driveway was before the date of Mrs. O'Connell's fall. There is no stipulation or judicial admission that Roper Electric Company made a special use, for its own benefit, and maintained the area where Mrs. O'Connell fell as a walkway-approach to its place of business. The second paragraph hypothesizes two essential ultimate facts, knowledge and acquiescence of Roper Electric Company. While true the latter elements were established by overwhelming evidence, the company sought to escape any duty by reason of the particular place of Mrs. O'Connell's fall. Roper Electric Company's stipulation of the general use made of the driveway by it and the individual defendants did not concede the special use and benefit to Roper Electric Company or that the vehicular traffic of Roper Electric Company's officers and agents had created an unnatural and artificial condition of rough, ridged, hummocked ice on the driveway and particularly at the place where the injury occurred.

The instruction properly hypothesized the artificial condition in the walkway, namely, the rough, ridged, hummocked ice. In MAI 22.01, 22.02, 22.03, 22.04, 22.05 and 22.06 it is indicated that the nature of the substance, defect or dangerous condition be specified. We hold plaintiffs' verdict directing instructions submitted the ultimate facts of duty to Mrs. O'Connell as the wife of an employee, as a pedestrian and member of the public, and as an invitee, together with a breach of the duty owed her, and resulting injury. The point is ruled against Roper Electric Company.

■ We now consider plaintiffs' appeal from the judgments entered in favor of the individual defendants, Omar and Alma Roper. Error is assigned in the trial court's overruling plaintiffs' motion to suppress and the reception in evidence of the legal description of the Roper premises, the plat of the subdivision in which the premises were located [showing the dedication of Howard Street], and the testimony of Mrs. Roper as the location of the boundary of the property. Plaintiffs contend such evidence was immaterial, irrelevant, confusing and misleading to the jury, and coupled with the argument counsel for Mr.

6. See opinion of Titus, C. J., in Brittain v. Clark, 462 S.W.2d 153, 155 (Mo.App.1970), for a thorough discussion of Rule 70.01(e).

and Mrs. Roper made was highly prejudicial.

The argument referred to is not contained in the transcript filed in this court. Although plaintiffs in their brief attribute certain remarks concerning this evidence to counsel for the Ropers during argument, we cannot consider matters not of record which are not agreed to by opposing counsel. Pretti v. Herre, 403 S.W.2d 568 (Mo. 1966); Rakestraw v. Norris, 469 S.W.2d 759 (Mo.App.1971); State v. Parker, 388 S.W.2d 830 (Mo.1965).

■■■■■ As we have heretofore indicated, the testimony of Mr. Roper as to the locations of his lot line was conclusionary in nature but we do not view this as preju-

dicial error. The legal description of the premises, and for that matter the plat of the subdivision, were relevant and material to the location of Mrs. O'Connell's fall, the special use made of the area involved, and, the legal responsibility for injuries occurring there. Since by their verdicts the jury found Roper Electric Company had the legal responsibility for the place Mrs. O'Connell sustained the fall, the jury was not misled by the evidence plaintiffs' complain of and we find no prejudice in the admission thereof.

The judgments are affirmed.

TITUS, C. J., and HOGAN, J., concur.

STONE, J., not participating.