Martha E. PAGANO and William J. Pagano,
Plaintiffs-Respondents,

v.

KOLBRENER, INC., a Corporation, d/b/a
the Brokerage, Defendant-Appellant.

No. 33789.

St. Louis Court of Appeals,
Missouri.

July 9, 1971.

Motion for Rehearing or for Transfer
to Supreme Court Denied
July 27, 1971.

Dearing, Richeson, Roberts & Wegmann, Hillsboro, for defendant-appellant.

Pannell, Dodson & Robinson, Festus, for plaintiffs-respondents.

LYON ANDERSON, Special Commissioner.

This is an appeal from a judgment in favor of plaintiff Martha Pagano for damages for personal injuries, and in favor of her husband, William J. Pagano, for loss of consortium. The suit was brought against Kolbrener, Inc., a corporation d/b/a The Brokerage, and Howard Donald, Sr. At the close of their case plaintiffs dismissed as to defendant Donald, and the case proceeded against Kolbrener. The jury returned a verdict on Count I in favor of Mrs. Pagano in the sum of $5,000.00, and on Count II in favor of Mr. Pagano in the sum of $2,000.00. From the judgment entered on said verdict defendant prosecutes this appeal.

On April 1, 1966 and for many years prior thereto defendant Kolbrener was engaged in the sale of merchandise in a building in Festus, Jefferson County, Missouri. On April 1, 1966 Mrs. Pagano entered said store as a customer, and while there fell into a cold air return duct located on the floor of said premises. As a result of said fall Mrs. Pagano sustained an injury to her person, alleged to be the proximate result of the negligence of defendant Kolbrener. The negligence charged was that the cold air duct or register " * * * was not properly seated in said floor, so that said register would give way when walked upon at a time when defendant Kolbrenner, Inc., knew or by using ordinary care, could have known of this condition, and plaintiff did not know and by using ordinary care could not have known of it, and defendant failed to use ordinary care to remove, repair, or warn plaintiff of the condition." There was a further charge that said defendant was negligent "In maintaining a cold air return register, in the floor of its premises, that was not properly affixed to said floor by screws or nails, so that * * * it would give way when walked upon, at a time when defendant Kolbrenner, Inc., knew or by using ordinary care, could have known of this condition, and plaintiff did not know and by using ordinary care could not have known of it, and defendant failed to use ordinary care to remove, repair or warn plaintiff of the condition."

The Kolbrener store is located on the north side of Main Street in Festus. Customers enter the store's front door from Main Street. At this store defendant sells, among other things, ladies wearing apparel. On April 1, 1966 Mrs. Pagano, accompanied by her daughter, entered the store intending to purchase a coat for herself and blouse for her daughter.

The front door through which Mrs. Pagano and her daughter entered is at the south end of an aisleway which extends northwardly to the rear of the store. After entering the store Mrs. Pagano looked at a few things on sale as she walked toward the rear of the store. While thus occupied a saleslady came forward and inquired if she could be of assistance. Mrs. Pagano replied that she was interested in a coat and that her daughter would like to see some blouses. The daughter then left with the saleslady, and Mrs. Pagano turned to look at coats which were hanging on a rack located in the aisle. Near the coat rack was a cold air return duct which was a part of the heating system of the store. The hole where this duct came through the floor was covered by a register or grate. It was located in the aisle where people would walk back and forth over it regularly. The hole into which this grate fit was thirty inches by twelve inches. The top part of the grate was thirty-one and three quarters inches long, and thirteen and three quarters inches

wide. It was larger than the hole and had an overhang of seven-eighths of an inch on each side. The flange on the underside of the grate that fits into the hole was three-eighths of an inch by measurement. The majority of the openings in the grate were five-sixteenths of an inch by two inches.

The grate was not secured to the floor by nails, screws or other devices. There were no nail holes, screw holes or holes for bolts in the grate for use in securing the grate to the floor. Mr. Vest, defendant's assistant store manager, was aware of this condition prior to April 1, 1966. Mr. Joseph L. Combs, who was store manager on April 1, 1966, testified that the register in question was not attached to the floor and that this condition had existed for many years prior to April 1, 1966. He further testified he never inspected it to ascertain if it was safe until after Mrs. Pagano received her injuries. At that time the grate was in the same condition it had been before Mrs. Pagano was injured. Mr. Combs stated he examined it to ascertain whether it would fall through the floor when walked upon and found that the grate was strong enough to hold him. The grate when in place over the hole fit into the hole in such a manner that a person could slide it lengthways one-half inch and sideways one-quarter inch. Mr. Combs testified that he examined it to ascertain how anyone could fall through the hole covered by the grate and found that the only way this could occur would be for the grate to be lifted from the hole, then turned around and nosed down into the hole. There were two other grates located in the floor of the store. These covered the warm air ducts. Both were secured to the floor by screws.

In the early part of 1965 defendant Donald, under contract with Kolbrener, covered the floor of the store with vinyl tiles. This work was completed prior to April 3, 1965, the date Donald forwarded his bill to Kolbrener for said work. The tiles were laid over a maple floor, a part of the original construction of the building erected in 1940. Over this floor was laid a three-eighths inch plywood, and over the plywood the vinyl asbestos tile. After this was done the grates were replaced in the same position as they were previously except they were about one-half inch higher.

Just prior to her fall Mrs. Pagano was looking at the coats on the coat rack. She was facing the rack and the front of the store. She testified: "Q. Will you just tell the jury in your own words, if you will, Mrs. Pagano, what happened as you were looking at the coats on that rack? A. I was looking at the coats and I naturally scooted over. I wear a larger size and they were towards the back. And in the process of going over I was stepping foot over foot and side by side, I suppose you'd call it. And I fell in this cold air return. Q. Now then, you say you were stepping side by side. Do you mean you were moving one foot approximately three or four inches and then the other foot in, side by side manner? A. Yes, sir. Q. Which of your feet went into this register? A. My right leg. * * * Q. How far did your leg go into the hole beneath the grate? * * * A. My knee or higher. * * * Q. What happened to the register at that point, or the grate? A. It flew up behind me. * * * And my left leg was out in front of me on the floor. * * * Q. * * * Mrs. Pagano, as you were there on the floor was a portion of that register sticking up out of the hole and behind your back? A. Yes, sir. Q. And under your arm? A. Yes, sir, my right arm was over it. Q * * * did you see that grate in the floor at any time before you fell? A. No, sir, I did not. * * * I was looking at the rack of coats. Q. And that was directly in front of you? A. Yes, sir. Q. And you were walking towards the end, looking for a larger size? A. Yes, sir. Q. And you don't know whether or not the register was seated in the floor prior to your fall? A. No, sir, I had no occasion to look down. * * * Q. * * * After this fall occurred can you state whether or not a portion of that reg-

ister was down into the hole next to your leg? A. It was against my back."

Defendant Donald was called as a witness for plaintiffs. He testified that as long as the register was seated in the hole it would not fall through the hole in the floor even if jumped upon. Defendant's store manager who also was called as a witness for plaintiffs testified that the grate would not fall through the floor by stepping or walking upon it. Like testimony was given by plaintiffs' witness Joe Pfister.

Combs testified that he did not, nor did anyone on behalf of Kolbrener, ever, following the installation of the registers and prior to Mrs. Pagano's fall, inspect the floor to ascertain if it was safe. He further testified that for many years prior to Mrs. Pagano's accident people would step on or walk over the grate, and that he had no information that the grate had fallen through the floor. He never found the grate loose over the hole at any time. Likewise, Vest, the assistant store manager, knew of no such complaints, incidents or falls having occurred in the area.

There was considerable testimony as to Mrs. Pagano's injuries. This evidence is not set out since no point as to the judgment being excessive is raised.

The first point urged by defendant is that the trial court erred in overruling its motion for a directed verdict at the close of all the evidence. In support of this assignment defendant contends that the evidence was not sufficient to make a submissible case of the negligence charged in the petition. There were two charges of negligence contained in the petition. The first charge was that the register was not, at the time of the accident, properly seated in the floor with the result that it would give way when walked upon, which condition defendant knew or by the exercise of ordinary care could have known, but failed to remove, repair, or warn Mrs. Pagano of the condition. The second charge was that defendant was negligent in failing to secure the register to the floor by screws or nails.

To determine whether a plaintiff has made a submissible case we must consider the evidence in the light most favorable to plaintiff and give such party the benefit of all favorable inferences that may reasonably be drawn from the evidence, but liability may not rest upon speculation or conjecture. Baker v. City of Festus, Mo., 418 S.W.2d 957; Brophy v. Clisaris, Mo.App., 368 S.W.2d 553; Probst v. Seyer, Mo., 353 S.W.2d 798.

In the case at bar the jury could reasonably have found that the register in question was not properly seated over the cold air duct at the time Mrs. Pagano stepped into it and sustained injury, but there was no evidence as to how it got into that condition or how long it had been in that position.

■ Liability of an owner of a store to a business invitee is based upon his superior knowledge of a defective condition on his premises. This knowledge may be actual or constructive. Actual knowledge may be inferred if it affirmatively appears from the evidence that an agent or employee of the owner, while acting within the scope of his employment, created the dangerous condition. Ward v. Temple Stephens Co., Mo., 418 S.W.2d 935; Busch v. Great Atlantic & Pac. Tea Co., Mo.App., 416 S.W.2d 247. Where there is no such showing there must be evidence that the condition had existed for a sufficient length of time to constitute constructive notice, or in other words, to show that the defendant in the exercise of ordinary care should have known of it. Ward v. Temple Stephens Co., supra.

■ In the case at bar there is no evidence to show that any agent or employee of defendant created the dangerous condition which was the proximate cause of the injuries suffered by Mrs. Pagano; nor was there any evidence as to the length of time the condition had existed prior to her fall. Thus there was no basis for finding that defendant had constructive notice of the

dangerous condition of the premises. Ward v. Temple Stephens Co., supra; Brophy v. Clisaris, supra. To constitute constructive knowledge it was necessary for plaintiffs to show that the condition complained of had existed for such a length of time that, by the exercise of reasonable care, defendant had an opportunity to discover and remedy it. Busch v. Great Atlantic & Pac. Tea Co., supra.

In our judgment plaintiffs failed to present a case for the jury on their first assignment of negligence; also on their second assignment of negligence, i. e., that defendant was negligent in failing to secure the register to the floor by screws or nails.

Plaintiffs voluntarily introduced the testimony of defendant's store manager who stated that the register would not fall through the floor when stepped upon. Plaintiffs' witness Combs testified that for many years prior to Mrs. Pagano's accident people would step or walk over the register and that he had no information that the grate had fallen through the floor when stepped upon. Like testimony was given by the assistant store manager, and by Joe Pfister, both called as witnesses by plaintiffs. Plaintiffs did not introduce any contradictory evidence. They are therefore bound by the testimony of said witnesses and said testimony must be considered in determining whether plaintiffs made a submissible case. There was no evidence that the register was ever discovered in the condition it was on the day Mrs. Pagano was injured.

It is a fundamental principle of law that one need not guard against occurrences which ordinarily prudent persons could not reasonably anticipate. Nelson v. C. Heinz Stove Co., 320 Mo. 655, 8 S.W.2d 918. In view of the uncontradicted testimony heretofore reviewed it is our opinion that we should not rule that a jury could find that defendant should have reasonably anticipated an occurrence such as shown by the record in this case and was therefore negligent in failing to secure the register to the floor in the manner suggested by plaintiffs as a means to prevent the accident.

It follows that the court erred in failing to direct a verdict at the close of all the evidence, and that the judgment should be reversed. It is so ordered.

PER CURIAM:

The foregoing opinion by ANDERSON, Special Commissioner, is adopted as the opinion of this court. The judgment is reversed.

BRADY, P. J., and WOLFE, J., concur.

DOWD, Judge (dissenting).

I disagree with the majority opinion which holds that the plaintiffs did not make a submissible case of negligence. The plaintiffs obtained a jury verdict based upon their verdict directing instruction predicated on the following findings:

"First, the grate was not maintained in such a condition that it was secure in the floor of defendant's store and as a result the floor was not reasonably safe for customers, and

\*　　\*　　\*　　\*　　\*　　\*

"Third, defendant Kolbrener Brokerage knew or by using ordinary care could have known of this condition, and

"Fourth, defendant Kolbrener Brokerage failed to use ordinary care to remedy it, and

"Fifth, as a direct result of such failure, plaintiff Martha E. Pagano was injured."

In determining whether plaintiffs made a submissible case we must consider the evidence in the light most favorable to plaintiffs and give plaintiffs the benefit of all favorable inferences that may be reasonably drawn from the evidence. Applying this test to the evidence, I believe plaintiffs made a submissible case of negligence. This grate weighing about 2 pounds was located in the aisle of a store "in an area where people would walk back and forth over it regularly." This grate covered a "cold air return" in the floor. This grate

fitted over a hole in the floor which was 30 inches by 12 inches. The grate was 31 inches by 13¾ inches. The grate was therefore larger than the hole and had an overhang of ⅞ of an inch on each side. The fit of the grate into the hole was such that the grate could be slid lengthways ½ inch and sideways ¼ inch while the grate was still in the hole. The flange on the underside of the grate which fit into the hole was ⅜ of an inch.

The grate was not fastened to the floor by nails, screws or other devices. Two other grates were screwed into the floor. The store manager testified that there was nothing holding the grate down in the floor. As pointed out in the majority opinion the defendant's store manager knew about the condition of this grate and this condition had existed for many years prior to the date of plaintiff's injury.

It is obvious that the cause of plaintiff's fall through the floor was that the grate had become unseated. In an aisle of a store where customers walk regularly this unseating could occur in many different ways. I believe that with the conditions present here it was reasonable to anticipate this unseating.

The jury could reasonably infer that the grate had become unseated because of the failure of the defendant to secure the grate in the floor. I believe that the defendant could reasonably anticipate that this 2 pound grate not secured and capable of being slid lengthwise and sidewise could become unseated. It is not necessary that the defendant should have anticipated the exact injury which occurred or the exact manner in which the injury occurred. Lebow v. Missouri Public Service Co., Mo., 270 S.W.2d 713, 715; Miller v. Brunson Const. Co., Mo., 250 S.W.2d 958 [4]. The "defendant may be held liable for any injury which, after the casualty, appears to have been the natural and probable consequence of his act or omission, if he might reasonably have anticipated that injury *of some kind* would result." (Emphasis

theirs). Reckert v. Roco Petroleum Corp., Mo., 411 S.W.2d 199; Miller v. Brunson Const. Co., supra; Boyd v. Terminal R. Association of St. Louis, Mo., 289 S.W.2d 33, 37 [3], 58 A.L.R.2d 1222; McLeod v. Linde Air Products Co., 318 Mo. 397, 1 S.W.2d 122. The liability of the defendant store-owner is based upon his superior knowledge of a defective condition on his premises which results in injury. Ward v. Temple Stephens Co., Mo., 418 S.W.2d 935 [2].

I believe that with the evidence here of a grate weighing about 2 pounds; seated in the floor by an under flange of only ⅜ of an inch; held down by nothing but gravity and capable of being moved; and, located in an aisle where customers regularly walk is sufficient evidence to warrant a jury conclusion that unless the grate was secured it could become unseated thereby creating a dangerous condition. A jury could reasonably find and infer that defendant's failure to prevent such unseating was a lack of ordinary care and constituted negligence. Obviously the jury so found in this case. In my opinion the plaintiffs made a submissible case.