**Joseph and Mary BRICE,
Plaintiffs-Appellants,**

v.

**The UNION ELECTRIC COMPANY,
Defendant-Respondent.**

No. 37897.

Missouri Court of Appeals,
St. Louis District,
Division Four.

April 26, 1977.

**630**

Edmund W. Albright, St. Louis, for plaintiffs-appellants.

Schlafly, Griesedieck, Ferrell & Toft, Charles G. Siebert, St. Louis, for defendant-respondent.

NORWIN D. HOUSER, Special Judge.

This is a suit for damages brought by Joseph Brice against Union Electric Company, with a count for loss of services and consortium by his wife Mary. Following a jury verdict for $3,780 for Joseph and $1 for Mary the trial court sustained defendant's post-trial motion for judgment notwithstanding the verdict and entered final judgment for defendant. Plaintiffs appealed.

Under contract General Installation Company agreed with Union Electric to inventory, load and transfer surplus pipe, fittings, valves and miscellaneous supplies from the latter's Labadie plant in Franklin County to its Rush Island Plant. Brice, an employee of General Installation, while working in the pipe yard of Union Electric at the Labadie complex, looking for material to load on a truck, sustained injuries as a result of stepping on a 2½ to 3 inch nail, which punctured his foot.

The pipe yard was large—a quarter of a mile square. The whole area was covered with miscellaneous materials and objects lying around on the ground. Pallets, piping, flanges, bends, elbows, all types and sizes of pipe fittings, debris, paraphernalia, crates, boards, etc. were scattered around and spread out on the ground. Grass and weeds grew in clumps and material was "laying in this stuff." The yard was littered, cluttered, with "stuff thrown around . . . more or less a bunch of junk." Ordinarily flanges and various kinds of paraphernalia in pipe yards are not stacked up in neat piles. Brice's job was to examine a list of needed materials, search for the desired items in the yard, load them on a truck and have a Union Electric employee inventory and check the items out as they left the premises.

On the day of the injury, March 15, 1974, Brice knew that it was important to watch where he was walking. There were no clear walkways Brice could have walked on to get to the material for which he was looking. After working in the yard for an hour and a half, threading through the debris, looking for the desired items, he came to a particularly large pipe fitting, a 90° elbow 21 inches in diameter. He could not have walked around this pipe fitting because the yard was "cluttered with material." There was so much "junk lying around" that he had to step over it, which he chose to do instead of stepping on flanges "and stuff like that." As he stepped over the pipe fitting and as his foot came down on the other side a nail went into his foot.

The protruding nail had been driven through a board 2 or 3 feet long, 3 inches wide, and ¾ inch thick. The board was not a new board. It was a piece of crating

lumber, dark gray to brown in color, sunk or "set" in the mud to a depth of an eighth to a quarter of an inch, surrounded by inch-high grass . . . "stuck in the mud and grass." There were crates in the yard in 1972, when Brice had previously been there. When Brice raised his foot after stepping on the nail the board came up with his foot, leaving a depression in the ground. There was grass around the board, but no grass where the board had been "setting." The board "had been there for quite some time."

Brice was watching where he was walking when he stepped over the pipe fitting . . . watching where he was stepping. He said " * * * as you walk along you are looking at the ground, looking for the particular items on the list," and indicated that another purpose of looking is to avoid stepping on something dangerous that comes within your line of vision. Brice walked to the pipe fitting, looked down, did not see anything, and stepped over. He looked over the 21-inch fitting before he stepped to see where he would be stepping. His "reason for stepping over was looking around, and that looked like the easiest way to go." He was looking where he was going when he stepped. He did not see the board or the nail. One could not see the board when "stepping about a foot in front of" the pipe fitting. Both the fitting and the grass surrounding the board obscured his vision. He stepped where he could not see. Part of the board was "way under" the pipe fitting, "laying up against the other side of the fitting." The board was lying so close to the fitting that he did not know whether he could have looked over the fitting and seen the board. By bending over and looking carefully over the fitting he could have seen the entire board, but he "might have had to move the fitting to see it." He did not bend or look completely over the fitting to see where he was going to step because he saw nothing "that would indicate it would take a closer look by bending over."

Plaintiffs submitted to the jury negligent failure of Union Electric to remove a condi-

tion on the surface of its lot (board with protruding nail) known to defendant, actually or constructively, and not known to plaintiff by exercise of ordinary care, as a result of which the surface was not reasonably safe for employees of General Installation. Defendant submitted the defense of contributory negligence.

The vital, dispositive issues on this appeal are (1) whether Brice made a submissible case of knowledge on the part of Union Electric, actual or constructive, of the dangerous condition of its land; (2) whether Brice had equal or superior knowledge or opportunity to obtain knowledge of the dangerous condition than did Union Electric; (3) whether Brice was exercising ordinary care for his own safety or was guilty of contributory negligence as a matter of law.

In determining these factual issues we consider the evidence in the light most favorable to Brice, and accord to him the benefit of all supporting inferences fairly and reasonably deducible from the evidence. *Bridges v. Arkansas-Missouri Power Co.*, 410 S.W.2d 106, 108 (Mo.App.1966). There were no witnesses to the casualty other than Brice. Union Electric introduced no evidence other than eight pages from Brice's deposition.

The following was sufficient evidence to make a submissible case of constructive knowledge of the dangerous condition on the part of Union Electric: The yard was owned and operated by Union Electric and under its control. Uniformed guards were employed by Union Electric to protect the property, admit persons lawfully on the premises to look for and remove items and material from the yard, and to inventory, check out and authorize such removal. The cluttered, littered condition of disarray had existed since 1972, a period of two years. The nail protruded from a piece of crating lumber. Crates had been observed lying in the yard in 1972. The lumber in which the nail was driven was not new lumber; it was weathered in appearance, dark gray to brown in color. It was imbedded in the

mud, surrounded by growing grass, but there was no grass in the depression from which the piece of wood was lifted. From the foregoing the jury could infer that the lumber, with the 2½ to 3 inch nail protruding therefrom, had been in the same place for an extended period of time, long enough that Union Electric, through its employees in charge of the yard, could and should have known of the dangerous condition in time to have removed it.

The evidence does not demonstrate as a matter of law that Brice had equal or superior knowledge or opportunity to obtain knowledge of the dangerous condition. Unlike the grease on the floor and feet of the ladder in *Hokanson v. Joplin Rendering Co., Inc.,* 509 S.W.2d 107 (Mo.1974), which was open, obvious and apparent if the invitee had only looked and was actually known to him, the dangerous condition in this case was hidden from Brice. At Brice's position as he approached the 21-inch circular pipe fitting the piece of lumber with the protruding nail was not visible to him. It was "way under" the fitting, "laying up against the other side," so close to the fitting that there was a question whether it could have been seen even if Brice had bent over the large object and looked down. It could not have been seen from a position one foot in front of the fitting. It might have been necessary to move the fitting in order to see it from Brice's vantage point. There was no duty on Brice to bend over the fitting and peer below it or move the fitting to obtain knowledge with respect to conditions awaiting him on the other side. Brice knew that all kinds of miscellaneous items, including "junk," were scattered about this debris-filled area, and he knew that it was important to watch where he was walking. In other words, he knew the general conditions prevailing in the yard and the necessity of exercising care in looking to see where he was stepping. Under the cases of *Gitterman v. Danella,* 356 S.W.2d 52, 54–55 (Mo.1962), and *Davidson v. International Shoe Co.,* 427 S.W.2d 421 (Mo.1968), however, his knowledge of the general condition from which the danger arose did not necessarily constitute knowledge and apprecia-

tion of the danger actually encountered. Asked whether within the hour before the accident he had inspected the area to see if there was anything dangerous on the ground that he might step on, Brice stated he glanced over the area, and started to answer by saying " * * * if I would have thought I would have seen anything dangerous, I probably would have—," at which point counsel for defendant interrupted and Brice's answer was never completed. There is no evidence showing that Brice had actual knowledge of the existence in the yard of dangerous nails protruding from boards, broken glass with sharp edges, or other objects lying on the ground among the fittings which would be dangerous to persons walking through the miscellany. Except for the nail that caused the injury there is no evidence of the existence of such objects in the yard. In the absence of evidence of the existence in the yard of dangerous objects of this nature, knowledge of a dangerous condition such as the board and nail in question is not to be imputed to Brice. Brice was in this yard on one occasion in 1972 and again for an hour and a half on March 15, 1974. Uniformed employees of Union Electric worked at guarded and supervised the operation of the yard and were in charge of all items and materials in the yard. It may be inferred that these employees were on the job at all times the yard was open for business. It cannot be said as a matter of law under the evidence in this case that Brice had equal or superior knowledge or a better opportunity to obtain knowledge, of the hidden, dangerous condition than did Union Electric through its employees.

Nor is Brice to be convicted of contributory negligence as a matter of law, under the evidence. For an invitee to be convicted of contributory negligence as a matter of law in walking into a dangerous situation the danger must not only be known to the plaintiff but also must be so obvious and glaring that a reasonably prudent person would not do so. *Burch v. Moore's Super Market, Inc.,* 397 S.W.2d 590, 594[5] (Mo. 1965); *Newberry v. City of St. Louis,* 335

Mo. 1, 70 S.W.2d 546 (1934); *Carden v. Lester E. Cox Medical Center,* 519 S.W.2d 338, 342[6] (Mo.App.1975); *O'Connell v. Roper Electric Co., Inc.,* 498 S.W.2d 847, 854[6] (Mo.App.1973); *Evans v. Sears, Roebuck & Co.,* 104 S.W.2d 1035, 1040[9] (Mo. App.1937). In *Bollman v. Kark Rendering Plant,* 418 S.W.2d 39, 46 (Mo.1967), an invitee case, the following rule announced in an employer-employee case was held applicable to a plaintiff: "He will not be declared guilty of contributory negligence as a matter of law unless the danger is so glaring, open and obvious as to threaten immediate and almost certain injury, or that a man of ordinary prudence would not attempt to occupy the place or use the machinery." That is not the situation here. Both elements (open, obvious, glaring danger, and knowledge of the danger) are absent. Brice did not concede that he had knowledge or appreciation of the dangerous condition which caused his injury. On the contrary he testified that he did not see the board or nail before the casualty. They were out of his sight, not visible from the direction he approached—in effect hidden from his sight, unless he bent over and scrutinized the other side of the fitting, or moved the fitting to reveal what lay underneath on the opposite side. This is not the case of an open, obvious, apparent and glaring danger. Brice's testimony was that he did watch where he was stepping; that he looked down, and looked over the fitting, to see where he was stepping,[1] and a jury could find that what he did was all that was required under the circumstances to constitute ordinary care for his own safety. True enough, if he had bent completely over the fitting and had looked down and back to the point of contact between fitting and ground he would have seen board and nail. Likewise, if he had moved the large fitting he would have seen board and nail. The requirement that Brice exercise ordinary care, however, did not impose upon him the duty to take such extraordinary precautions. This is especially true in view of his testimony that he saw nothing to indicate that he should "take a closer look by bending over." In *Bond v. Kansas City Transit, Inc.,* 401 S.W.2d 440, 443 (Mo.1966), the Supreme Court adverted to the rule that "a plaintiff is not under a duty to *look closely* for danger where there is no reason for him to anticipate danger." There was nothing about the appearance of the fitting or the surroundings to give Brice cause to anticipate that he would step on something on the other side that would cause him harm. "One cannot be found to be negligent in failing to take precautions against danger of which he is not aware and [the] existence of which he has no reason to suspect." *Shute v. Prom Motor Hotel, Inc.,* 446 S.W.2d 137, 142[8] (Mo.App.1969).

Considering the evidence in the light most favorable to Brice, and according him the benefit of the favorable inferences to which he is entitled, the question whether he was negligent in failing to look where he was stepping was a question of fact for the jury.

Judgment reversed and cause remanded with instructions to set aside and vacate the order of February 3, 1976 and reinstate the verdict and judgment rendered on the 24th day of October, 1975 in favor of plaintiffs and against defendant.

SIMEONE, C. J., and ALDEN A. STOCKARD, Special Judge, concur.

---

1. This distinguishes the cases cited by respondent, *Bond v. Kansas City Transit, Inc.,* 401 S.W.2d 440 (Mo.1966), and *Kobusch v. Ruberoid Co.,* 355 Mo. 48, 194 S.W.2d 911 (1946). In *Bond* plaintiff did not look to see where she was stepping. In *Kobusch* plaintiff did not look to see if the crane was approaching him.