Heber E. WRIGHT and Nita Kay
Wright, his wife,
Plaintiffs-Appellants,

v.

INTERCO, INCORPORATED, its Division P. N. Hirsch & Company,
Defendant-Respondent.

No. 38852.

Missouri Court of Appeals,
St. Louis District,
Division Three.

May 23, 1978.

Donald M. Witte, Clayton, for plaintiffs-appellants.

Evans & Dixon, Eugene K. Buckley, St. Louis, for defendant-respondent.

WEIER, Judge.

Plaintiff Heber E. Wright was injured when he fell while climbing down the slats of a wooden pallet, which was normally used to move merchandise and which was leaning against a loading dock at defendant's warehouse in St. Louis County. Plaintiff and his wife sued defendant for its alleged negligence in failing to remove this pallet (one slat of which allegedly had a beveled edge) or in failing to warn plaintiff of the allegedly dangerous condition of the pallet. At the close of plaintiffs' case the trial court sustained defendant's motion for a directed verdict. On appeal plaintiffs contend they made a submissible case of negligence. We disagree and affirm.

■ In considering whether the trial court erred in sustaining defendant's motion for a directed verdict, we consider the evidence and all reasonable inferences which may be derived therefrom in the light most favorable to plaintiff. *Wired Music, Inc., of the Great Midwest v. Great River Steamboat Company,* 554 S.W.2d 466, 467[2] (Mo.App.1977).

On June 12, 1969, plaintiff drove a truck to defendant's warehouse in Overland, Missouri, to pick up some merchandise. Prior to that date he had been to defendant's warehouse "[s]ome forty or fifty times" during the ten-year period he had been a truck driver. At about 2 p. m. plaintiff backed his truck into door number 21 of the loading dock. The dock was about 300 feet long and contained 34 doors or docking stations. Door number one was at the south end of the dock and door number 34 was at the north end. There were two sets of concrete steps, one at each end of the dock, leading up to the elevated surface of the dock which extended along its entire length.

After backing in at door 21 plaintiff "found a pallet up against the dock and I climbed the pallet and went to the door that my trailer was backed into." Each time plaintiff was at this loading dock he had seen "pallets up against the dock." Other truck drivers also recalled seeing pallets in the area around the dock or "against the dock" prior to June 12, 1969. Plaintiff said that on the day of the accident the dock area was "littered with pallets." The pallets were made of unfinished wood and were normally used for stacking merchandise so the goods could be moved easily with a forklift. The slat type pallets, which were about four feet square, were made by nailing wooden slats to one or both sides of three two-by-four inch pieces of lumber about four feet long, commonly called "two-by-fours." Each slat was about three quarters of an inch thick and three inches wide. They were nailed to the two-by-fours about two inches apart [1] on one or both of the two inch sides leaving a space of approximately four inches for insertion of the fork of the lift machine. Plaintiff had seen slat type pallets stacked inside the building. He had used these pallets as if they were ladders other times prior to this date and no employee of defendant had ever told him not to "use these pallets." The warehouse foreman once "said that where you got your rig backed in that is the way for you to get in." He also "told me [plaintiff] that I had to go out the same way I came in." The assistant foreman also told plaintiff "that I had come up that way, you go back down" or "go out the same way you came in." Other truck drivers also used the pallets to get up and down between the dock and the asphalt surface of the parking lot when there were pallets leaning against the dock. Drivers also got up and down by jumping, pulling themselves up with the help of the back of a truck or by using the concrete stairs.

After climbing up this pallet and going to door 21, plaintiff was told to move his trailer to door 25. Plaintiff "got down off the dock on the same pallet" and moved his trailer to door number 25. He then climbed

---

1. In addition to the slat type pallets just described, there are "smooth pallets" made with plywood. "[T]hese are the type of pallets that they brought out with the freight on them to my trailer" and these were the ones used in the "shipping area."

up to the dock using another pallet on the south (driver's) side of his truck. Merchandise was brought out to plaintiff's truck on pallets and plaintiff removed the goods from pallets and stacked them in his truck. Once during the loading process plaintiff climbed down the same pallet on the south side of his truck to get a pair of gloves out of his truck. He then got back up onto the dock by using the stairs at the north end of the dock and continued loading the truck. At about 5:15 p. m. when the truck was loaded plaintiff picked up some bills at the shipping desk, which was near door 21, and walked out of the warehouse and onto the dock through door 29. After checking to make sure the rear door of his truck was secure, plaintiff saw another different slat type pallet leaning against the dock on the north side of his truck. It was wedged underneath the wooden bumper of the dock. The pallet was sticking out about two inches and plaintiff could see it "was weathered quite a bit. It was a very dark gray color." Plaintiff could see the "spaces between each of the boards but I couldn't distinguish any other thing about it." He did not know how this pallet got there. Plaintiff started to climb down the pallet sideways by placing the toe and side of each foot into the openings between the slats while one or both of his hands rested on the top of the dock. He stepped first with his right foot, then his left, then his right. When he put his weight on the right foot for the third step his foot slipped off the slat and he fell about two to two and a half feet to the pavement, landing on his arms and face. He broke his arm and sustained other injuries.

After gaining his composure plaintiff looked at the pallet and observed "[t]he board where I had placed my foot was beveled, the corner edge of it was beveled . . . the corner of the board was gone. Instead of being a square shoulder, why the shoulder was completely gone and it was a beveled edge." The beveled part was not across the whole length of the board but only about six inches of it.

A mechanical engineer testified that a person's foot would be more likely to slip off a beveled edged board than a square board.

The rules adopted by Missouri courts for determining whether defendant was negligent appear in Restatement of the Law of Torts, Second (1965) §§ 343 and 343A(1).

§ 343: "A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

"(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

"(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

"(c) fails to exercise reasonable care to protect them against the danger."

§ 343A(1): "A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness."

*Hokanson v. Joplin Rendering Company, Inc.*, 509 S.W.2d 107, 110[1, 2] (Mo.1974).

■ It is clear from plaintiffs' petition and from arguments made by plaintiffs' counsel at trial that the dangerous "condition" which plaintiffs contend defendant knew or should have known was not a pallet leaning against the dock which might be used as a ladder but rather the beveled edge on a slat of this particular pallet. "[A] case cannot be pleaded and tried in the trial court on one theory and on a different theory in the court of appeals." *Plumlee v. Ramsay Dry Goods Company, Inc.*, 451 S.W.2d 603, 605[6] (Mo.App.1970). *See also, McIlroy v. Hamilton*, 539 S.W.2d 669, 677[12] (Mo.App.1976). Plaintiffs' arguments in their brief to the effect that defendant was negligent in allowing rough wooden pallets to be used as ladders is a different theory of negligence from that pled and tried in the court below and will

not be considered on appeal.[2] In order to make a submissible case of negligence against defendant, it was incumbent on plaintiffs to adduce evidence from which a jury could reasonably find that defendant knew (had actual knowledge) or in the exercise of reasonable care should have known (had constructive knowledge) that there was a beveled slat on a pallet which was leaning against the dock in a position to be used as a ladder. *See, Ward v. Temple Stephens Company,* 418 S.W.2d 935, 938[3] (Mo.1967).

■ Plaintiffs' evidence failed to show that defendant had actual knowledge of the existence of this condition. Even though defendant's employees were on the dock while plaintiff's truck was being loaded there is no evidence that they saw the beveled slat from the dock. Indeed plaintiff testified that he did not see this imperfection in the pallet when he looked down at the pallet from the dock. Plaintiff did not know how this pallet got there and there can be no reasonable inference from the evidence that defendant's employees put it there.

Plaintiffs' evidence also failed to show that defendant had constructive knowledge of the existence of this condition. Plaintiff testified that he had climbed on two other pallets that day (by door 21 and on the south side of his truck at door 25) but there is no mention of this third pallet (on the north side of his truck at door 25) until plaintiff related what occurred after he finished loading his truck. Plaintiff said that after checking "the security" of the rear door of his truck he "turned and saw this pallet against the dock on the north end of my rig." Plaintiff then made up his mind that he would use the pallet. He walked over to the pallet, looked down at it, started climbing down the slats and fell after the third step. There is no evidence that this pallet was leaning against the dock for more than a minute or two prior to the time plaintiff used it. Under these circumstances defendant cannot be charged with constructive knowledge of the beveled slat on this pallet. *Ward v. Temple Stephens Company, supra,* 418 S.W.2d 935, 938–39[5–6] (Mo.1967). *Pagano v. Kolbrener, Inc.,* 469 S.W.2d 745, 748–49[3] (Mo.App.1971); *Richardson v. Safeway Stores, Inc.,* 379 S.W.2d 827, 828–29[2] (Mo.App.1964). Plaintiffs' reliance on *Brice v. Union Electric Company,* 550 S.W.2d 629 (Mo.App.1977) is misplaced. In *Brice* the court held that defendant had constructive knowledge of a two and one-half to three inch nail protruding up from a board on its property because uniformed employees guarded the property, the cluttered, littered condition of disarray on the property had existed for two years, the nail protruded from a piece of crating and crating had been observed on the property for two years, and the board was weathered and imbedded in mud surrounded by growing grass with no grass in the depression from which the board was lifted. In the case at bar there was no evidence to indicate that the pallet with the beveled slat had been at the dock prior to the time plaintiff first noticed it, only a minute or two before his injury.

The judgment is affirmed.

GUNN, P. J., and KELLY, J., concur.

---

2. Even if we were to consider this theory of negligence, it appears that defendant would not be negligent in allowing pallets to be used as ladders (assuming the evidence showed defendant had actual or constructive knowledge of this practice) in that defendant had no superior knowledge of this allegedly dangerous condition on its premises. *Hokanson v. Joplin Rendering Company, Inc., supra,* 509 S.W.2d 107, 110–11[5–8] (Mo.1974).