

# In the Missouri Court of Appeals
# Eastern District

### DIVISION TWO

| | | |
|---|---|---|
| MELISSA MOODY, | ) | No. ED111786 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | Honorable Michael W. Noble |
| DYNAMIC FITNESS MANAGEMENT, LTD., | ) | |
| | ) | |
| Appellant. | ) | FILED: June 25, 2024 |

Dynamic Fitness Management, Ltd. ("DFM"), appeals the judgment entered after a jury verdict in favor of Melissa Moody on her claim for damages arising from an injury she sustained while weightlifting during a group class led by a DFM trainer. We conclude that Moody's claim for negligence is barred by the doctrine of implied primary assumption of the risk. The judgment is reversed.

### Factual and Procedural Background

Moody joined a fitness center in March 2011 and wanted to work out with a personal trainer to help her stay motivated and in a routine. She initially worked individually with a DFM trainer in one-on-one sessions. During those sessions, among other types of exercise, Moody used kettlebells and dumbbells but never a barbell. When that trainer was transferred to a different location, Moody began attending a one-hour group class led by a different trainer ("the group trainer") in January 2013. Moody knew that the group trainer focused on Olympic-style weight

training, which uses a barbell, and "wanted to give it a try." Moody understood that weightlifting included a risk of injury and that she could be injured if she attempted to lift too much weight.

The group class usually had five or six clients. Working in pairs, participants rotated through a series of weightlifting and other exercises at various stations. According to Moody, the group trainer would start someone on an exercise and then "walk[] around teaching the class." For some of the exercises, once a client could perform an exercise comfortably at a certain weight, the client could add more weight and increase progressively. Sometimes Moody added weight and sometimes she did not. Moody understood that if she ever felt like "something was too much weight for [her]," then she could reduce the weight or simply decide not to do the exercise at all. When questioned at trial about whether the group trainer ever asked her to do something she could not do or did not feel comfortable doing during the class, Moody testified that she felt uncomfortable "all the time," but there was "nothing in particular that [she] didn't want to try doing."

On May 5, 2013, at her twenty-fifth class with the group trainer, Moody was injured while performing a push press, a very common exercise in which the participant takes a barbell off a rack at about chest-height, drops his or her knees "a little bit" and then pushes the barbell overhead. Moody had never before tried this particular exercise. The group trainer demonstrated how to perform the push press and then instructed Moody to do three repetitions before he left the push press station to attend to other clients. The barbell itself and the weights already loaded onto it totaled 65 pounds. Moody testified that performing the push press "wasn't easy," describing it as "kind of heavy[,]" but she explained that she "wanted to try it." She was able to complete all three repetitions at that weight without any problems. When the group trainer returned to the push press station, he added weight to the barbell for a total of 85 pounds and instructed Moody to do three

more repetitions. He again left to check on other clients. Moody thought that 85 pounds was "kind of a lot" of weight. Nevertheless, as she explained at trial, she "was, again, going to try it." Moody completed the first two repetitions, which were "not easy" because "[i]t was a lot of weight." Still, she did both of them without any problem. Moody expected to be able to complete the third repetition as well, but as she attempted to lift the barbell, she felt an excruciating pain shooting down her neck, shoulders and back. Moody managed to place the barbell back on the rack before she collapsed. She was ultimately diagnosed with a herniated disc in her neck and underwent two surgeries. At trial, Moody acknowledged that she voluntarily participated in the push press exercise and understood the risk of injury associated with it.

Moody's first personal trainer, who had worked with her in one-on-one sessions, testified as an expert for Moody at trial. She explained that DFM's standards provided that trainers were expected to conduct initial assessments of clients before training begins, which she did with Moody. She opined at trial that, because Moody had tightness in her neck and shoulders that limited her range of motion in her upper body, Moody lacked the range of motion and the appropriate posture to perform overhead lifts with a barbell. The group trainer did not conduct an initial assessment of Moody when she began working with him in the class. Moody testified that she did not communicate with the group trainer the same way she had with her first personal trainer during their one-on-one sessions, explaining, "With the group training, we never really talked about anything specifically, because there were four to five other people in the group."

Moody filed a petition alleging that the group trainer's negligence in directing her to perform an 85-pound push press caused her injury. The trial court instructed the jury under comparative fault principles, rejecting DFM's argument that Moody's claim was completely barred by the doctrine of implied primary assumption of the risk. The verdict director instructed

3

the jury to assess a percentage of fault to DFM if it found any of the following conduct by the group trainer was negligent and caused or contributed to cause Moody's damages: (a) failing to conduct an initial assessment of Moody, (b) failing to assess whether she was capable of performing a push press, (c) failing to supervise her while she performed that exercise or (d) instructing her to perform a push press when it was unsafe to do so. The trial court also instructed the jury to assess a percentage of fault to Moody if it found that she had been negligent by failing to disclose a prior medical condition or by voluntarily participating in the push press with knowledge and appreciation of the risk of injury and that such negligence caused or contributed to cause her damages. The jury returned a verdict in favor of Moody, finding that her damages were $1 million and assessing 30 percent of the fault to DFM and 70 percent to Moody. The trial court denied DFM's post-trial motion, and this appeal follows.

**Discussion**

In its first point on appeal, DFM contends the trial court erred in rejecting its argument that Moody's cause of action was barred under the doctrine of implied primary assumption of the risk. We agree.

The doctrine of implied primary assumption of the risk provides that "if a person voluntarily consents to accept the danger of a known and appreciated risk, that person may not sue another for failing to protect him from it." *Coomer v. Kansas City Royals Baseball Corp.*, 437 S.W.3d 184, 191 (Mo. banc 2014). The participant in an activity is deemed to have assumed the risk of injury from those risks that are inherent to that activity. *Id.* at 191-92. The defendant owes no duty of reasonable care with respect to such inherent risks, and recovery on a claim of negligence by the participant against the defendant is completely barred. *Id.*; *see also Munoz v.*

4

*Six Flags St. Louis, LLC*, 670 S.W.3d 239, 243-44 (Mo. App. E.D. 2023).[1]  Nevertheless, a defendant still owes a duty of reasonable care "not to alter or increase" the inherent risks of a particular activity.  *Coomer*, 437 S.W.3d at 197-98.  For example, in *Sheppard by Wilson v. Midway R-1 Sch. Dist.*, 904 S.W.2d 257, 264 (Mo. App. W.D. 1995), the court found that although performing a long jump inherently involves the risk of injury from landing badly, the defendant could still be liable to the plaintiff who was injured because of the defendant's negligent preparation of the landing pit.  *See also Ferbet v. Hidden Valley Golf & Ski, Inc.*, 618 S.W.3d 596, 607 (Mo. App. E.D. 2020) (finding that the risk of injury from an uneven sliding surface is inherent in snowtubing but likely could be increased by negligent maintenance).  Issues surrounding a defendant's duty are questions of law, which we review de novo.  *Payne v. Fiesta Corp.*, 543 S.W.3d 109, 126-27 (Mo. App. E.D. 2018).  We view the evidence at trial and the reasonable inferences drawn therefrom in the light most favorable to Moody.  *See id.*

We must first determine whether the risk of sustaining an injury is inherent in performing an 85-pound push press during a group class led by a personal trainer.  We conclude it is.  "For a risk to be inherent, it must be structural or involved in the constitution or essential character of something[.]"  *Coomer*, 437 S.W.3d at 201 (internal quotation marks, citations and emphasis omitted).  "The mechanism of injury can determine whether a particular risk was inherent to the activity."  *Munoz*, 670 S.W.3d at 244.  Here, the mechanism of injury is not only *essential* to the character of the activity in this case, *it is itself* the activity: performing an 85-pound push press.  An integral part of this and other exercises in this class—and many other workouts—is putting physical stress on the body by intentionally pushing oneself beyond what is comfortable.  Stressing

---

[1] In the past, implied *secondary* assumption of the risk also barred recovery based on the plaintiff's own negligence. But, as the Court explained in *Coomer*, since the adoption of comparative fault, the plaintiff's conduct may only be considered as a means of reducing his or her recovery, as it was in this case, not as a complete bar.  437 S.W.3d at 194 (citing *Gustafson v. Benda*, 661 S.W.2d 11 (Mo. banc 1983)).

5

the body carries a risk of injury. Eliminating physical stress on the body would alter the fundamental nature of this type of exercise. In fact, Moody admitted at trial that there is a risk of injury associated with weightlifting in general and with performing a push press in particular.

We must next consider whether DFM increased that inherent risk of injury. Moody contends there was an increased risk because the group trainer did not conduct an initial assessment of Moody or assess her ability to do a push press.[2] Moody claims such assessments would have revealed that she was incapable of doing a barbell push press and that the exercise was "completely inappropriate" for Moody based on her range of motion and posture. Moody also asserts that the risk of injury was increased because the group trainer did not supervise her while she performed the push press. But any increase to the risk of injury by not having the trainer stand beside her to supervise Moody's every repetition of this exercise was itself an inherent part of this *group* class. Unlike one-on-one personal training, in the structure of a one-hour group class, it is essential that multiple clients be able to perform exercises simultaneously so that each client can get an effective workout in that amount of time. It is also essential that the trainer move around among those clients, which necessarily means each client will not always get one-on-one supervision during each exercise. Eliminating that aspect of group exercise—so that only one client exercises at a

---

[2] Moody also contends that the group trainer's failure to review the first trainer's written assessment of Moody increased the risk of injury, such that her claim should not be completely barred by the doctrine of implied primary assumption of the risk. As counsel pointed out at oral argument, there was *evidence* at trial regarding whether such a review occurred, but—contrary to counsel's assertion—this particular act of alleged negligence was not raised in relation to the implied primary assumption of the risk doctrine at trial. Rather, Moody cited only generally to the group trainer's negligence when responding to DFM's argument at trial about implied primary assumption of the risk. And the only specific acts that Moody claimed constituted negligence in the comparative fault verdict director Moody offered at trial did not include the group trainer's failure to review the prior assessment. We will not consider this theory of liability for overcoming the implied primary assumption of the risk doctrine because it is based on a different act of negligence than those Moody relied on at trial. *See generally Wright v. Interco, Inc.*, 567 S.W.2d 149, 151-52 (Mo. App. 1978) (declining to consider theory raised on appeal that defendant was negligent in allowing a certain dangerous condition because, although there was evidence at trial about that condition, the plaintiff had not pled or raised that as the basis for liability in the trial court, proceeding instead on a theory of liability based on a different dangerous condition). Likewise, we will not address Moody's argument that all of the group trainer's conduct was reckless, which is also a theory of liability she never advanced in the trial court.

time with undivided attention from the trainer—would fundamentally alter the nature of this activity.

In any event, to the extent there was any increase in the risk of injury because of the failure to assess or individually supervise Moody, those were risks well known to her at the time she performed the push press that caused her injury. When a risk associated with an activity is "perfectly obvious or fully comprehended," the plaintiff has consented to it by participating in that activity and the defendant has performed its duty to make that activity "as safe as [it] appear[s] to be." *Munoz*, 670 S.W.3d at 247 (internal quotation marks and citation omitted). In *Munoz*, for example, the plaintiff was injured at Fright Fest—a "haunted" event at an amusement park—while running away from one of the actors who jumped in front of her to scare her. *Id*. at 241-42. On appeal, this Court held that the risk of injury from falling while running in "fright" from an actor was inherent to Fright Fest and was a risk the plaintiff had knowingly and voluntarily accepted. *Id*. at 244. This Court also rejected the plaintiff's claim that the inherent risk of injury had been increased because the actor chased after her in violation of the amusement park's policy. *Id*. at 246-47. Running from the actors, whether or not she had been chased by them, was the specific risk that injured the plaintiff—a risk she fully understood before she attended the event and one that she had witnessed for hours before she was injured. *Id.* at 241-42, 247. Because the risk was "perfectly obvious" to the plaintiff, the implied primary assumption of the risk doctrine completely barred her negligence claim against the amusement park. *Id*. at 247, 249.

In *Payne*, this Court reached a different result because the plaintiff was *unaware* of the specific risk that caused his injury and that risk was not inherent to the activity. 543 S.W.3d at 128-29. In that case, the plaintiff was injured when he fell out of a "human gyroscope ride" because he was not properly secured into it by two untrained bystanders. *Id*. at 116. On appeal,

7

this Court held that while other risks (such as nausea or dizziness) may be inherent in the ride, falling out of the ride because one is not properly secured is not. *Id*. at 128-29. The *Payne* Court concluded that, because the plaintiff testified that he did *not* know the people helping him were mere bystanders and instead believed they were trained and qualified to operate the ride, he had not knowingly and voluntarily assumed that risk. *Id*. at 116, 130.

Here, by the time Moody was injured, she had already attended 24 of the hour-long classes, during which she witnessed firsthand the level of supervision the group trainer provided. It was perfectly obvious—and Moody fully comprehended—that the group trainer would not be supervising each and every repetition of exercises that Moody performed, including the push press exercise he instructed her to perform on the day in question. Moody was also well aware that the group trainer had not conducted an initial assessment of her and had not specifically assessed her ability to do the push press. She knew by that point that his information about anything specific to her was limited because of the group setting. Moody voluntarily decided to try a push press for the first time, fully comprehending not only the inherent risk of injury from engaging in that activity, but also the group trainer's lack of assessment of her and the level of supervision he would provide while she performed it. Even after the first set of repetitions at 65 pounds, Moody wanted to try the push press at the heavier weight, again fully comprehending the inherent risk of injury from trying to lift too much weight and the fact that the group trainer had not assessed or supervised her performance of the initial set. And, then, after her first two repetitions of the 85-pound set— which she again performed without assessment or supervision—Moody attempted the third repetition and was injured.

Even viewed favorably to Moody, the evidence in this case demonstrates that the risk of being injured while performing the 85-pound push press in a group class without one-on-one

supervision was inherent and known to Moody.  To the extent the lack of an initial assessment increased that risk, that too was a risk of which Moody was aware and that she accepted when she voluntarily performed the exercise that caused her injury.  Thus, her claim against DFM for negligence is barred by the doctrine of implied primary assumption of the risk.  Point I is granted. Because this point is dispositive, we deny Points II through IV as moot.

### Conclusion

For the foregoing reasons, the judgment is reversed.  Pursuant to Rule 84.14 (2023), we enter judgment in favor of DFM.

_____
MICHAEL E. GARDNER, Judge

Kurt S. Odenwald, P.J., concurs.
Renée D. Hardin-Tammons, J., concurs.

9